**United States Court of Appeals**

**FOR THE EIGHTH CIRCUIT**

_____

No. 97-2651

_____

Byron James Miller,                          *
                                             *
            Appellant,                       *   Appeal from the United States
                                             *   District Court for the
      v.                                     *   Eastern District of Missouri.
                                             *
United States of America,                    *
                                             *
            Appellee.                        *
                                             *

_____

Submitted: January 13, 1998.
Filed: February 10, 1998

_____

Before LOKEN and MURPHY, Circuit Judges, and KYLE[1], District Judge.

_____

MURPHY, Circuit Judge.

Miller was convicted by a jury of conspiracy to possess with intent to distribute crack cocaine in violation of 21 U.S.C. § 846 and possession with intent to distribute more than 500 grams of cocaine in violation of 21 U.S.C. § 841(a)(1). He was

_____

[1]The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota, sitting by designation.

sentenced by the district court[2] to 292 months in prison.  Miller seeks a new trial on appeal because of the denial of his motion for a mistrial, restriction of his cross-examination of an informant, and Batson violations by the prosecution.  We affirm.

Bryant Troupe, a paid informant, provided information that Miller and Larry Kerr were involved in a crack distribution ring.  Troupe was asked by government agents to purchase drugs from Miller, and he bought crack from him on August 14, 1996 and again on August 28.  Troupe and Miller talked about the possibility of moving to larger amounts, and on November 12 Miller called Troupe to tell him he had a kilogram of crack available for $26,000. They arranged to make an exchange at an apartment in St. Louis, and federal agents obtained a search warrant for the apartment.  Troupe was accompanied to the site by an undercover St. Louis police officer who was posing as the actual buyer of the crack.  Troupe and the undercover officer met Miller and Kerr outside the apartment, and they went inside to close the transaction. Federal agents followed and arrested Miller and Kerr and seized the crack, cash, a cellular telephone and pager, and miscellaneous papers.  Miller then gave written  consent for a search of his residence, where an additional 748 grams of cocaine, scales, and $1800 in cash was seized.

Miller argues that he is entitled to a new trial because the district court improperly denied a motion for a mistrial made by co-defendant Kerr. During his testimony about the information he provided, Troupe was asked how he remembered meeting Miller in 1989.  He responded that Miller had asked him to put up some friends from out of town, including Kerr, and that he had seen them making crack during the two or three days they stayed with him. No objection was made to the  evidence at the time, but during a subsequent sidebar on a different issue Kerr's lawyer argued that it was prior bad acts testimony for which the prosecution had not given

_____

[2]The Honorable Catherine D. Perry, United States District Judge for the Eastern District of Missouri.

proper notice.  See Fed. R. Evid. 404(b).  Defendants requested an instruction to the jury, and the court gave an instruction drafted by Kerr's attorney which told the jury to disregard any drug activity in 1989.  The next day Kerr's attorney moved for a mistrial which the court denied.[3]

A ruling on a motion for mistrial is only reversed if it was an abuse of discretion.  U.S. v. Flores, 73 F.3d 826, 833 (8th Cir. 1996).  Troupe's testimony came early in the course of a four day trial, and the remark about what he had seen in 1989 was almost immediately addressed with a curative instruction formulated by defense counsel.  Such an instruction is ordinarily sufficient to alleviate any prejudice that might flow from improperly admitted testimony.  Id.  The evidence at trial tied Miller to several drug transactions, including the sale of a kilogram of crack cocaine before his arrest.  Other evidence of involvement in the drug trade was found in his residence--over 700 grams of cocaine, scales, and $1800 cash.  In light of the lack of any contemporary objection and the considerable record indicating guilt, the brief reference to the 1989 visit was harmless, even if its admission were viewed as error, because its impact on the verdict would be slight at most.  Fed. R. Crim. P. 52(a); Flores, 73 F.3d at 832.  The district court did not abuse its discretion in denying the motion for a mistrial.

Miller also argues that he is entitled to a new trial because of restrictions on his examination of Troupe.  He sought to question Troupe about an "adult abuse order" resulting from an assault on his girlfriend and about the cause of his depression.  The court permitted extensive cross-examination of Troupe, but it prevented counsel from going into the area of domestic abuse or from the opportunity for recross. Evidence had

---

[3] Although Miller did not join in the mistrial motion, he argues that he should be permitted to raise its denial on appeal because of an agreement with the district court that it would consider any evidentiary objection as having been made by both defendants. The agreement did not explicitly encompass motions, but we need not reach the issue of whether Miller has waived the right to complain about the denial of a mistrial because of our discussion on the merits.

already been produced that Troupe was a paid informant, that he had previously used and sold drugs, that he suffered from depression and had twice attempted suicide, and that he had financial difficulties. The court did not permit inquiry into instances of domestic violence because it was collateral and had little relevance. The court did not err because extrinsic evidence of a witness' prior bad acts cannot be used to impeach, and cross-examination is limited to only those acts that are probative of the propensity for truthfulness. Fed. R. Evid. 608(b); U.S. v. Nazarenus, 983 F.2d 1480, 1486 (8th Cir. 1993). Since Troupe had already been questioned about his depression there was no need for recross on the subject, and it was of limited value on the issue of his credibility. The district court did not abuse its discretion by its restriction on further examination of Troupe.

The other basis for a new trial argued by Miller is that his right to equal protection was violated by the prosecutor's striking two black venire members on the basis of race. He claims that similarly situated white members were left on the panel. After hearing the reasons given by the prosecutor for the strikes, the district court found that they were not based on race, and our review is for clear error. Hernandez v. New York, 500 U.S. 352, 365 (1991); U.S. v. Jenkins, 52 F.3d 743, 746 (8th Cir. 1995). The prosecutor's asserted reason for striking venire member Sterward was based on "the cumulative effect of a number of items," including her familiarity with the area of the crime, the fact that her friends and family had had problems with law enforcement, and her possible recognition of Miller. The reason for striking panel member McCowan was because he had a relative with a case pending against the St. Louis Police Department and two of the key witnesses for the government belonged to the department.

Miller argues that these proffered justifications were merely pretext because similarly situated whites were not stricken, but his argument is not born out by the record. McCowan was the only panelist with a relationship to a pending case against the St. Louis Police Department, and only Sterward expressed a familiarity with Miller.

The prosecutor struck two white venire members who, like Sterward, had relatives with drug violations. Miller made no attempt at trial to rebut the race-neutral justifications offered by the prosecution and thus failed to carry his burden to prove that the justifications were pretextual. U.S. v. Carr, 67 F.3d 171, 176 (8th Cir. 1995). The government also did not use its peremptory challenges to remove the greatest possible number of blacks from the jury, which negates an allegation of purposeful discrimination. U.S. v. Montgomery, 819 F.2d 847, 851 (8th Cir. 1987). On this record Miller has failed to make out a Batson violation entitling him to a new trial.

Since there is no merit to Miller's asserted grounds for a new trial, the judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.