Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued November 17, 2006          Decided February 6, 2007

No. 05-5142

WILLIE E. BOYD,
APPELLANT

v.

CRIMINAL DIVISION OF THE UNITED STATES DEPARTMENT OF
JUSTICE, ET AL.,
APPELLEES

———

No. 04-5369

WILLIE E. BOYD,
APPELLANT

v.

UNITED STATES MARSHALS SERVICE, ET AL.,
APPELLEES

———

Appeals from the United States District Court
for the District of Columbia
(No. 04cv01100)
(No. 99cv02712)

———

*Steven H. Goldblatt*, appointed by the court, argued the cause and filed the briefs as *amicus curiae* for appellant Willie E. Boyd.

*Willie E. Boyd*, pro se, filed briefs.

*Jane M. Lyons*, Assistant U.S. Attorney, argued the cause for appellees Criminal Division of the United States Department of Justice, et al. and United States Marshals Service, et al. With her on the brief were *Kenneth L. Wainstein*, U.S. Atttorney at the time the brief was filed, and *R. Craig Lawrence*, Assistant U.S. Attorney. *Julia K. Douds* and *Michael J. Ryan*, Assistant U.S. Attorneys, entered appearances.

Before: GINSBURG, *Chief Judge*, and RANDOLPH and ROGERS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* ROGERS.

ROGERS, *Circuit Judge*: Following his conviction of drugs and weapons charges, Willie Boyd filed a series of requests for information under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, in an attempt to uncover alleged violations of *Brady v. Maryland*, 373 U.S. 83, 86 (1963), during his trial. Although various documents were disclosed, the government agencies withheld others pursuant to FOIA exemptions. On appeal, Boyd challenges the grants of summary judgment to the agencies, contending through court-appointed amicus curiae that the district court erred in ruling that the FOIA exemptions were

properly invoked, in failing to grant other remedies and to award costs. We affirm.

**I.**

Boyd was arrested on a parole violation warrant at his girlfriend's house on February 1, 1997. Based on a gun and a black bag containing cocaine that were found in the master bedroom closet, Boyd was indicted and convicted of drugs and weapons charges, including being a felon in possession of a firearm and of possession with intent to distribute cocaine. His conviction was affirmed on appeal. *United States v. Boyd*, 180 F.3d 967 (8th Cir. 1999). Following his trial, Boyd learned that his girlfriend's brother, Bryant Troupe, had been a government informant for several years and had sold drugs in the past. This information was contained in the prosecutor's *Brady* disclosure letter in a case in which Troupe had testified at trial as a government informant. *See Miller v. United States*, 135 F.3d 1254, 1255-56 (8th Cir. 1998). Amicus contends that this information, which he believes could have been used to support Boyd's defense that the gun and drugs found in the closet belonged to Troupe and to suggest that the government may have failed to investigate that possibility because it had an interest in not jeopardizing convictions that Troupe, acting as an informant, had helped to obtain, was withheld from Boyd during his criminal trial in violation of *Brady*, 373 U.S. at 87.

In 1998 Boyd filed the first of several FOIA requests seeking information about himself and Troupe from several federal agencies involved in Boyd's prosecution, including the Executive Office for United States Attorneys ("Attorneys' Office"), the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("BATF"), and the Bureau of Prisons ("BOP"). The agencies released some documents and withheld others pursuant

to FOIA Exemptions 7(A), 7(C), and 7(D).[1] In 1999, Boyd filed a complaint, and later an amended complaint, challenging the agencies' invocations of FOIA exemptions and the adequacy of their searches. The district court granted summary judgment to the Attorneys' Office and BOP, but denied judgment to BATF based, in part, on its failure to demonstrate the adequacy of its search.

Upon a further search, BATF located a work file that had been kept by the BATF agent in charge of the investigation in Boyd's criminal case. Because the work file contained documents that were not part of the official case file, BATF processed it for release in accordance with Boyd's FOIA request. The district court, after appointing counsel for Boyd and ordering discovery, granted summary judgment to BATF. The district court denied Boyd's request for costs on the ground that he had not substantially prevailed.

Following new FOIA requests in 2003 and 2004 to the Criminal Division of the Justice Department ("Criminal Division") and the United States Marshals Service ("Marshals Service") for information about himself and Troupe, Boyd filed another complaint. The district court granted summary judgment to the agencies, finding that they had demonstrated the adequacy of their searches and ruling that they had properly invoked exemptions to withhold information. By order of December 27, 2005, this court consolidated Boyd's appeals.

---

[1] The government also withheld documents pursuant to Exemption 3, which covers "matters that are . . . specifically exempted from disclosure by statute." 5 U.S.C. § 552(b)(3). Because the government advised during oral argument that these documents have been released to Boyd, Amicus's challenge to the invocation of Exemption 3 is moot. *See Perry v. Block*, 684 F.2d 121, 125 (D.C. Cir. 1982).

## II.

Congress established FOIA to allow private persons to access government records and thereby be informed about "what their government is up to." *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989) (internal quotation marks omitted). Congress also recognized, however, that the disclosure of certain information "may harm legitimate governmental or private interests" and accordingly enacted several exemptions to FOIA disclosure requirements. *Summers v. Dep't of Justice*, 140 F.3d 1077, 1080 (D.C. Cir. 1998); *see also Stern v. Fed. Bureau of Investigation*, 737 F.2d 84, 88 (D.C. Cir. 1984). Upon *de novo* review of the grants of summary judgment, *see Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 313 (D.C. Cir. 2003), this court must determine whether the agencies sustained their burden of demonstrating that the withheld documents are exempt from disclosure under FOIA, *see Johnson v. Executive Office for U.S. Attorneys*, 310 F.3d 771, 774 (D.C. Cir. 2002); *Summers*, 140 F.3d at 1080.

## A.

Exemption 7(A) authorizes the withholding of "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). The government meets its burden by demonstrating that release of the requested information would reveal "the size, scope and direction of [the] investigation" and thereby "allow for the destruction or alteration of relevant evidence, and the fabrication of fraudulent alibis." *Alyeska Pipeline Serv. Co. v. U.S. Envtl. Prot. Agency*, 856 F.2d 309, 312 (D.C. Cir. 1988) (internal quotation marks omitted).

In Boyd's case, the government explained that disclosure would "promote the criminal activity of" the targets of the investigation, "allow [the targets] to avoid arrest and prosecution," and "provide them information that would allow them to change their operations to avoid detection." Because the individuals under investigation are all "related [to], controlled [by], or influenced by" Boyd, disclosure of the information could reasonably be expected to reveal to the targets "the size, scope, and direction of [the] investigation," *Alyeska*, 856 F.2d at 312, and allow them to destroy or alter evidence, fabricate fraudulent alibis, and take other actions to frustrate the government's case.

The government's explanation also adequately meets Amicus's contentions that the government has not identified "a concrete prospective law enforcement proceeding," *see Bevis v. Dep't of State*, 801 F.2d 1386, 1389 (D.C. Cir. 1986) (quoting *Carson v. U.S. Dep't of Justice*, 631 F.2d 1008, 1018 (D.C. Cir. 1980)) (internal quotation marks omitted), or specified that the enforcement proceeding is pending or reasonably anticipated, *see Mapother v. Dep't of Justice*, 3 F.3d 1533, 1540 (D.C. Cir. 1993). In *Bevis*, this court held that investigations related to potential prosecutions for the murders of several Americans in El Salvador constituted concrete law enforcement proceedings. *Bevis*, 801 F.2d at 1387-89. Amicus maintains that here the government has asserted only that its investigation concerned "illegal activities" and "criminal activities" without specifying the type of criminal activity under investigation. Unlike in *Bevis*, however, sufficient specificity regarding the government's investigation is provided by its identification of the targets of the investigation: "individuals . . . to some degree, related [to], controlled [by], or influenced by" Boyd.

Although Amicus implied during oral argument that no investigations involving Boyd were still active, the

government's affidavit states that the investigation at issue involves the "ongoing collection of data" and that the withheld records relate to "potential criminal proceedings against individuals." *See Mapother*, 3 F.3d at 1540; *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 870 (D.C. Cir. 1980). The duration of the investigation was brief; the documents at issue are dated 1997, Boyd was convicted in April 1998, and the government invoked Exemption 7(A) in early 1999. Therefore, Amicus fails to show that Exemption 7(A) was improperly invoked.

**B.**

Exemption 7(C) authorizes the government to withhold "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). The government may nonetheless be required to disclose the documents if the individual seeking the information demonstrates a public interest in the information that is sufficient to overcome the privacy interest at issue. *See Reporters Comm.*, 489 U.S. at 762, 776. In order to trigger the balancing of public interests against private interests, a FOIA requester must (1) "show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake," and (2) "show the information is likely to advance that interest." *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004). If the public interest is government wrongdoing, then the requester must "produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred." *Id.* at 174.

Amicus posits district court error on the government's obligation under *Brady* to disclose exculpatory evidence in

Boyd's criminal trial. In *Brady*, the Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment." *Brady*, 373 U.S. at 87. The Court later explained that "evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985). Because the duty to disclose under *Brady* "encompasses evidence 'known only to police investigators,'" *Strickler v. Greene*, 527 U.S. 263, 280-81 (1999) (quoting *Kyles v. Whitley*, 514 U.S. 419, 438 (1995)), "[i]n order to comply with *Brady* . . . 'the individual prosecutor has a duty to learn of any favorable evidence known to [those] acting on the government's behalf,'" *id.* at 281 (quoting *Kyles*, 514 U.S. at 437). Consequently, Amicus contends, the public has an interest in knowing both whether *Brady*-related misconduct occurred during Boyd's criminal trial and whether the government generally complies with its *Brady* obligations, including whether the Justice Department has adequate procedures to ensure that trial prosecutors are made aware of all *Brady* information in the government's possession.

Even assuming Amicus has identified a sufficient public interest, we conclude that Exemption 7(C) was properly invoked because Amicus has failed to "produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred." *Favish*, 541 U.S. at 174. Of the two evidentiary showings that Amicus contends would warrant a belief of government misconduct, neither suffices. First, Amicus suggests that Boyd's discovery of the disclosure letter in the *Miller* case containing potentially exculpatory information about Troupe suggests the government failed to comply with its *Brady* obligations. Even after discovery, however, Amicus makes no showing that Boyd has

identified anything withheld at his criminal trial but produced under FOIA that would suggest an actual *Brady* or Jencks violation, *see* 18 U.S.C. § 3500. Amicus also points to letters from Boyd's defense counsel indicating that he never received certain allegedly exculpatory documents and to the prosecutor's answer, when asked by defense counsel about his disclosures several years after the case, that no such documents had been disclosed because they did not constitute *Brady* material. However, letters the prosecutor wrote in 1998 suggest that the documents at issue were turned over and it is doubtful that a reasonable person would infer government misconduct from unsworn letters from defense counsel years after Boyd's 1998 conviction. The record shows that the prosecutor in Boyd's criminal case turned over materials to Boyd's defense counsel pursuant to Federal Rule of Criminal Procedure 16, such as any statements made by Boyd and written summaries of expert testimony that the government intended to use at trial. Boyd acknowledges that the prosecutor also turned over exculpatory grand jury testimony that implicated Troupe. He offers no reason for the government to have been selective in its production.

Second, Amicus points to the discovery of the BATF agent's work file during Boyd's FOIA litigation as indicating that the government may not have complied with its *Brady* obligations. Amicus suggests that the prosecutor in Boyd's criminal case may have been unaware of the documents in that file and therefore may have mistakenly thought he had disclosed all material exculpatory evidence. Neither Amicus nor Boyd, however, produces any evidence that the work file actually contained *Brady* or Jencks material that had not been disclosed. Although Boyd had sought a report of an interview of a man named Albert Greer, because the report was located in the work file and subsequently disclosed, the issue is moot for purposes of this FOIA action. *See Perry v. Block*, 684 F.2d 121, 125

(D.C. Cir. 1982). Boyd also suggests that the BATF agent deliberately concealed records based on an email revealing the BATF agent's personal views about releasing documents. These documents, however, were released, and the agent's opinion is immaterial.

Thus both Amicus and Boyd fail to produce evidence sufficient to meet the *Favish* standard. Unsubstantiated assertions of government wrongdoing—e.g., regarding the seizure of Boyd's jailhouse phone conversations, lies by the prosecutor, and alleged perjury by a U.S. Marshal—do not establish "a meaningful evidentiary showing." *See Favish,* 541 U.S. at 175. Absent evidence to support most of the alleged improprieties, and clearly not enough for a reasonable person to conclude that the remaining allegations of government malfeasance might be true, *see id.* at 174, there is no "counterweight on the FOIA scale for the court to balance against the cognizable privacy interests in the requested records," *id.* at 174-75, and thus the challenge to the government's invocation of Exemption 7(C) fails, *see id.* In any event, although Amicus stated during oral argument that the BATF agent's creation of a separate work file in Boyd's case suggests that the agent might be engaging in similar behavior in other cases, and more generally suggests a vulnerability in Justice Department procedures for ensuring that prosecutors are informed of all exculpatory evidence in the government's possession, a single instance of a *Brady* violation in Boyd's case would not suffice to show a pattern of government wrongdoing as could overcome the significant privacy interest at stake. *See Reporters Comm.*, 489 U.S. at 780; *Beck v. Dep't of Justice*, 997 F.2d 1489, 1493 (D.C. Cir. 1993).

In addition to withholding and redacting information under Exemption 7(C), in response to Boyd's requests for information concerning Troupe, the Attorneys' Office and the Marshals

Service also issued Glomar responses, refusing either to confirm or to deny the existence of responsive information, *see Phillippi v. CIA*, 546 F.2d 1009, 1011 (D.C. Cir. 1976); 5 U.S.C. § 552(c)(2),[2] but claiming that, if such information existed, it would be protected under Exemption 7(C).   Where an informant's status has been officially confirmed, a Glomar response is unavailable, and the agency must acknowledge the existence of any responsive records it holds.  *See Benavides v. Drug Enforcement Admin.*, 968 F.2d 1243, 1246 (D.C. Cir. 1992).  Boyd's request for information concerning Troupe was not limited to his own criminal prosecution, but sought from the agencies "any and all information in your files on Bryant Troupe, as a confidential informant."   His request thus encompasses information about Troupe's involvement in the *Miller* case, in which the government admits Troupe's status as an informant was officially confirmed.

Although in other circumstances a remand might be required for the district court to determine whether the government possesses the requested information and, if so, whether its withholding of the information is justified, as was true in *Benavides*, *id.*, none is required here.  The government

---

[2]  Section 552(c)(2) provides:

> Whenever informant records maintained by a criminal law enforcement agency under an informant's name or personal identifier are requested by a third party according to the informant's name or personal identifier, the agency may treat the records as not subject to the requirements of this section unless the informant's status as an informant has been officially confirmed.

5 U.S.C. § 552(c)(2).

properly invoked Exemption 7(C) to protect information concerning Troupe. Because Boyd was not entitled to this information, he was not harmed by the government's refusal to confirm or deny whether it possessed responsive information. Any error, then, in invoking Glomar would not entitle Boyd to anything more under FOIA. *See also Oguaju v. United States*, 288 F.3d 448, 451 (D.C. Cir. 2002), *vacated on other grounds sub nom. Oguaju v. Marshals Serv.*, 541 U.S. 970, *judgment reinstated*, 378 F.3d 1115, *amended, reh'g denied*, 386 F.3d 273 (D.C. Cir. 2004).

## C.

Exemption 7(D) authorizes the withholding of "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to disclose the identity of a confidential source . . . and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation . . . information furnished by a confidential source." 5 U.S.C. § 552(b)(7)(D). "[A] source is confidential within the meaning of Exemption 7(D) if the source provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred." *U.S. Dep't of Justice v. Landano*, 508 U.S. 165, 172 (1993) (internal quotation marks omitted).

Amicus does not claim that the informant in Boyd's case did not receive an assurance of confidentiality. Boyd's assertion that the government's declarations are inconsistent, because one refers to an express assurance while another refers to an implied assurance, ignores the possibility that more than one informant may have been involved in his case or that the informant may have received both assurances, albeit at different times; in any event, Boyd offers nothing that would call into question the

evidence cited in the BATF affidavit to demonstrate the informant received an express grant of confidentiality. Hence, the government may properly invoke Exemption 7(D) to withhold the identity of the confidential informant in Boyd's case and the information furnished by the informant. Although Amicus makes much of the fact that Troupe's status as an informant was confirmed in *Miller*, that confirmation does not amount to an admission that he was an informant in Boyd's case as well. We need not address Amicus's contention that the government is nonetheless required to disclose the same information that was officially disclosed in the *Miller* case, *see Wolf v. CIA*, Nos. 05-5394 & 06-5072, slip op. at 13-14 (D.C. Cir. Jan. 16, 2007), because the Attorneys' Office advised Boyd that, upon request, it would provide him with all public information concerning Troupe in its possession.

Amicus also contends that the government is precluded from invoking Glomar in conjunction with Exemption 7(D) in response to Boyd's requests for information concerning Troupe because his status as an informant was officially confirmed in *Miller*. Because we concluded that the government's invocation of Glomar in conjunction with Exemption 7(C) deprived Boyd of no information to which he was entitled, there is no need to revisit the issue with regard to Exemption 7(D). Any information that may have been the subject of an erroneous invocation of Glomar was nonetheless properly withheld under Exemption 7(C).

To the extent Amicus also contends that the government should not be able to withhold under Exemption 7(D) material exculpatory evidence that was wrongfully withheld at Boyd's trial, Amicus presents a policy argument for Congress's consideration. The disclosure obligation that *Brady* imposes at a defendant's criminal trial based on constitutional considerations is not the same disclosure obligation imposed

under FOIA by Congress.  To vindicate the former, a defendant may collaterally attack his conviction pursuant to 28 U.S.C. § 2255.  *See Kyles*, 514 U.S. at 421-22.  To vindicate the latter, a defendant may appeal the agency's withholding of requested information for failure properly to invoke a FOIA exemption or otherwise to comply with FOIA search obligations.  In other words, the disclosure requirements are not coextensive. Amicus's suggestion that an agency's compliance with FOIA is nonetheless deficient where the agency may allegedly have failed to make the trial prosecutor aware of *Brady* material conflates two separate procedures by which a defendant may obtain information from the government.  It ignores that "a disclosure made to any FOIA requester is effectively a disclosure to the world at large." *Students Against Genocide v. Dep't of State*, 257 F.3d 828, 836 (D.C. Cir. 2001); *see also Favish*, 541 U.S. at 174.  Congress, however, not only enacted section 2255 to allow correction of convictions imposed in violation of the law, it also enacted exemptions to FOIA disclosure obligations under specified circumstances. Amicus's contention that wrongfully withheld *Brady* material may never be protected under Exemption 7(D) would rewrite Congress's statutory scheme.  In any event, this court has rejected a balancing of interests under Exemption 7(D).  *See Parker v. Dep't of Justice*, 934 F.2d 375, 380 (D.C. Cir. 1991).

### D.

Amicus's other challenges to the grants of summary judgment fail.  Boyd's *pro se* briefs also provide no basis for finding district court error.

The affidavits filed by the agencies in response to Boyd's FOIA requests make clear that their "search[es] [were] reasonably calculated to uncover all relevant documents." *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984) (internal quotation marks omitted); *see Perry*, 684

F.2d at 126-27.  Although Amicus makes much of the failure to uncover or account for particular audio tapes, the fact that a particular document was not found does not demonstrate the inadequacy of a search.  *See Iturralde*, 315 F.3d at 315; *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999).

The district court did not abuse its broad discretion in declining to conduct an *in camera* inspection of the BATF agent's work file and of the documents withheld under Exemption 7(D).  *See Carter v. U.S. Dep't of Commerce*, 830 F.2d 388, 392 (D.C. Cir. 1987); *Ctr. for Auto Safety v. Envtl. Prot. Agency*, 731 F.2d 16, 20 (D.C. Cir. 1984).  Although *in camera* review may be particularly appropriate if the agency affidavits do not describe the documents and justifications for withholding in sufficient detail to demonstrate that the claimed exemption applies, *Carter*, 830 F.2d at 392-93, Amicus has not demonstrated that the agencies failed to provide sufficiently detailed affidavits, nor offered evidence of bad faith.  Upon discovering the work file, BATF released responsive non-exempt documents.  Under the circumstances, Amicus fails to show the district court abused its discretion by failing to conduct *in camera* review of the withheld documents.

Neither did the district court abuse its discretion by declining to order the government to disclose all segregable information in records withheld under Exemption 7(D).  Observing that grand jury testimony associated Troupe with the gun and drugs found in his sister's home where Boyd was arrested, Amicus speculates that the government may have questioned Troupe about the items without giving him assurances of confidentiality, and thus segregable non-exempt documents may exist.  The agencies are entitled to a presumption that they complied with their obligation to disclose "any reasonably segregable portion of a record," 5 U.S.C. §

552(b); *cf. U.S. Postal Serv. v. Gregory*, 534 U.S. 1, 10 (2001) (citing *United States v. Chem. Found. Inc.*, 272 U.S. 1, 14-15 (1926)); *Fed. Trade Comm'n v. Invention Submission Corp.*, 965 F.2d 1086, 1091 (D.C. Cir. 1992), and the record indicates that they did segregate non-exempt information in documents withheld under other FOIA exemptions.

Nor did the district court abuse its discretion by not requiring the government to specify the date on which the Criminal Division destroyed responsive documents. Amicus, noting the several month delay between Boyd's request for documents and the Criminal Division's response, suggests that the Criminal Division may have acted in bad faith in destroying the documents and seeks the date of destruction to support its claims. This court has rejected the notion that an initial agency delay in responding to a FOIA request constitutes bad faith. *See Iturralde*, 315 F.3d at 314-15. But even if the documents were destroyed during the relevant time frame, their destruction, if performed in accordance with specified guidelines, would not imply bad faith. Amicus has made no proffer of a contrary records destruction schedule.

Finally, the district court did not err in denying Boyd's request for costs because he did not "substantially prevail[]." 5 U.S.C. § 552(a)(4)(E). In neither of the March 15, 2002 orders on which Amicus relies did the district court order the government to turn over documents to Boyd. *See Edmonds v. Fed. Bureau of Investigation*, 417 F.3d 1319, 1321-23 (D.C. Cir. 2005) (citing *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 601, 604-05 (2001)); *Oil, Chem. & Atomic Workers Int'l Union, AFL-CIO v. Dep't of Energy*, 288 F.3d 452, 456-57 (D.C. Cir. 2002).

Accordingly, we affirm the grants of summary judgment.