WALLACE, Senior Circuit Judge,
concurring:
In resolving this case, we must apply 5 U.S.C. § 552(c)(2) to the facts at issue. That section provides:
Whenever informant records maintained by a criminal law enforcement agency under an informant’s name or personal identifier are requested by a third party according to the informant’s name or personal identifier, the agency may treat the records as not subject to the requirements of this section unless the informant’s status as an informant has been officially confirmed.
Id. (emphasis added). In other words, once a confidential informant’s status has been “officially confirmed,” the Drug Enforcement Agency (DEA) cannot merely provide a Glomar response — that is, refuse to acknowledge or deny the existence of the requested records. Boyd v. Criminal Div. of U.S. Dep’t of Justice, 475 F.3d 381, 389 (D.C.Cir.2007).
The specific circumstances pursuant to which an informant’s status is deemed “officially confirmed” is a matter of first impression and great importance. Yet, in resolving this issue, both the prior case law and the legislative history of section 552(c)(2) are of little assistance. It also does not help that the Department of Justice (DOJ) has not promulgated any rule or regulation interpreting this provision. Additionally, while it is true that the plain meaning of statutes govern their interpretation, this principle is not of much assistance here: “official” means “authoritative” or “authorized,” Webster’s Third New Int'l Dictionary 1567 (3d ed. 1986), but this definition begs the question of who is authorized to make a confirmation official.
*789 The DOJ and Pickard unsurprisingly present opposing views of what it means for a government agent to confirm officially an informant’s status. Borrowing language from the rule for “official acknowledgments,” the DOJ insists that an official confirmation requires that “the information requested must already have been made public through an official and documented disclosure.” Fitzgibbon v. C.I.A., 911 F.2d 755, 765 (D.C.Cir.1990) (emphasis added). Thus, the DOJ avers that a do-mar response was appropriate in this case because that agency has not issued an official press release disclosing Skinner’s status.
There is, however, no logical reason for importing the “official acknowledgment” test into the context of section 552(c)(2). As other courts have explained, “official acknowledgment” and official confirmation do not implicate the same concerns. The standard for “official acknowledgment,” for instance, was established to protect the government from officially releasing its sensitive information. See id. (explaining that the “official acknowledgment” criteria are significant because they recognize “that in the arena of intelligence and foreign relations there can be a critical difference between official and unofficial disclosures”). In contrast, the purpose of section 552(c)(2) is to protect a confidential informant’s privacy and safety. See North v. U.S. Dep’t of Justice, 658 F.Supp.2d 163, 171 (D.D.C.2009) (“[E]ven acknowledging the existence of responsive records constitutes an unwarranted invasion of the targeted individual’s personal privacy”).
As a practical matter, there are several reasons why a government agency would not want to acknowledge officially a fact that is widely reported. But in the section 552(c)(2) context, once a confidential informant’s status has been revealed — whether through a documented press release or otherwise — the secrecy of his status is of little value to the government and he does not necessarily enjoy the same level of privacy and safety.
What further troubles me about the DOJ’s position — that a press release is the only way to confirm officially a confidential informant — is that, to the DOJ’s knowledge, no confidential informant has ever been officially confirmed in this, manner. It is difficult to believe that Congress intended section 552(c) to be effectively inoperative. See Corley v. United States, 556 U.S. 303, 129 S.Ct. 1558, 1566, 173 L.Ed.2d 443 (2009) (“[0]ne of the most basic interpretive canons [is] that [a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant” (internal quotation marks omitted)).
Pickard’s position, in contrast to the DOJ’s approach, is that when the Government presents testimony and exhibits in open court regarding a confidential informant’s status, these disclosures constitute official confirmation. In my view, this interpretation of section 522(c)(2) makes more sense. The Supreme Court has held, albeit in a different context, that “[t]he prosecutor’s office is an entity and as such it is the spokesman for the Government.” Giglio v. United States, 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). Accordingly, in the absence of a different DOJ rule, I believe that so long as the prosecution, as an agent of the Government, has solicited testimony in open court that a witness is a confidential informant, this is sufficient to confirm officially his or her status. I therefore concur with the majority.
I do, however, have one fairly significant concern: interpreting section 552(c)(2) in this manner may create difficulties for both federal prosecutors and confidential informants. On the one hand, prosecutors frequently must rely on informants, who *790 possess vital information, to prosecute dangerous criminals. On the other hand, the DEA and confidential informants have a different interest in secrecy and privacy than federal prosecutors. Yet, under the majority holding, an Assistant United States Attorney can eliminate that privacy interest by asking a single question — i.e., “Did you serve as a confidential informant” — in open court.
Given these difficulties, my view of this case may have been different if the DOJ had issued regulations interpreting section 552(c). Under Chevron U.S.A., Inc. v. Natural Resources Defense Council and its progeny, we afford substantial deference to reasonable administrative interpretations of federal statutes promulgated by notice and comment, or otherwise appropriate rulemaking. 467 U.S. 837, 843, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). But by failing to issue such regulations, we are required to afford the DOJ’s interpretation of section 552(c) the same amount of deference we give Pickard’s or any other litigant’s. See Alaska v. Fed. Subsistence Bd., 544 F.3d 1089, 1095(9th Cir.2008) (“We do not afford Chevron or [even] Skidmore [v. Swift & Co., 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944) ] deference to litigation positions unmoored from any official agency interpretation because Congress has delegated to the administrative official and not to appellate counsel the responsibility for elaborating and enforcing statutory commands” (internal quotation marks omitted)).
Of course, as the majority correctly points out, its decision does not necessarily require the DEA to disclose all of the specific information and documents requested by Pickard. “Congress established FOIA” to strike a balance between the public’s interest in knowing “what [its] government is up to” and the “legitimate governmental or private interests” in withholding documents subject to FOIA’s exemptions. Boyd, 475 F.3d at 385 (internal quotation marks omitted). Accordingly, at this point, we are merely requiring the DEA to take the next step — that is, to produce a Vaughn index. See Vaughn v. Rosen, 484 F.2d 820 (D.C.Cir.1973) (ordering government to provide an itemized index of the particular FOIA exemptions claimed for each requested document).