James A. ANDREWS, Plaintiff,

v.

**DEPARTMENT OF JUSTICE,**
**Defendant.**

**Civil Action No. 14–999 (EGS)**

United States District Court,
District of Columbia.

Signed 09/28/2015

James A. Andrews, pro se.

Jodi George, U.S. Attorney's Office for the District of Columbia, Washington, DC, for Defendant.

### MEMORANDUM OPINION

Emmet G. Sullivan, United States District Judge

■ James Andrews requested information from the Federal Bureau of Investigation ("FBI") under the Freedom of Information Act, 5 U.S.C. § 552, and Privacy Act, 5 U.S.C. § 552a (collectively "FOIPA").[1] The FBI conducted what it considers to have been a reasonable search in response to that request, and found one responsive document. The Department of Justice ("DOJ") therefore moves for summary judgment, arguing that it has discharged its FOIA responsibilities. Mr. Andrews opposes the motion. Upon consideration of the motion, the opposition and reply thereto, the applicable law, and the entire record, the Court **GRANTS** the motion for summary judgment.

### I. Background

#### A. Mr. Andrews' FOIPA Requests and this Lawsuit.

On April 9, 2012, Mr. Andrews submitted to the FBI a FOIPA request for a copy of " 'a Form 211 and a Form 11369 with my name on them.' " Def's Mot. for Summ. J. ("Mot."), Statement of Material Facts as to Which There is No Genuine Issue ("Def.'s SMF"), ECF No. 9–1 ¶ 1. Mr. Andrews provided the claim number that he stated was on the forms and informed the FBI "that he believed a copy of the forms was 'possibly' in the possession

of the FBI's Public Corruption Office in Columbus, Ohio." *Id.*

On April 12, 2012, the FBI informed Mr. Andrews that his request did not contain sufficient information to enable an adequate search of the FBI's Central Records System ("CRS") and provided him with a standardized form to complete. Def.'s SMF ¶ 2. Mr. Andrews responded on April 24, 2012, providing additional information and documentation to the FBI. *Id.* ¶ 3. On May 24, 2012, the FBI acknowledged that it had received the request and advised Mr. Andrews that it would be searching the CRS system for responsive information and would inform him of the results. *Id.* ¶ 5. On August 31, 2012, the FBI informed Mr. Andrews by letter that one four page document had been located and was being released to him in its entirety. *Id.* ¶ 6.

On September 12, 2012, Mr. Andrews submitted a second FOIPA request for " 'a specific one page record, a specific IRS Form 211, preliminary copy enclosed' " which, Mr. Andrews stated, he had sent to the " 'Informant Claim Examiner at the Internal Revenue Service Campus at Cincinnati, Ohio.' " *Id.* ¶ 7. Mr. Andrews stated that the record that the FBI had released to him on August 31, 2012, was "a copy of a fax he had previously submitted to the FBI's Columbus Field Office dated March 26, 2012." *Id.* The FBI acknowledged receipt of this request on October 22, 2012, and on November 2, 2012, informed Mr. Andrews by letter that the record responsive to this request was the same record that had been released to him on August 31, 2012. *Id.* ¶¶ 8–9. This letter also stated "that the records Plaintiff sought 'have already been properly re-

---

1. Mr. Andrews filed this action against the U.S. Department of Justice ("DOJ") Office of Information Policy ("OIP"). "Because the FOIA provides a cause of action only against Executive Branch Departments and regulato-

ry agencies," the Court finds DOJ to be the proper defendant and *sua sponte* substitutes DOJ as the defendant in this case. *See* Trupel v. Drug Enforcement Admin., 2007 WL 1238867 at *1 (D.D.C. Apr. 27, 2007).

viewed and withheld' pursuant to the provisions of the Freedom of Information and Privacy Acts." *Id.* ¶ 9. According to the defendant, this statement was erroneous because as the August 31, 2012 letter indicated, the document was released to Mr. Andrews in its entirety. *Id.*

On May 1, 2013, Mr. Andrews submitted a third FOIPA request for " '[f]orm 211 which I completed on September 3, 2004.' " Id. ¶ 12. Mr. Andrews stated that " '[t]he five boxes at the bottom were then completed by the IRS, and this is the one-page record that you now withhold, and which I now newly request" subject to exemptions. *Id.* On May 7, 2013, the FBI acknowledged receipt of this request, and on May 14, 2013, informed Mr. Andrews that the search of CRS located "no main files" responsive to his request. Id. ¶¶ 13–14. The letter also stated that the document released to Mr. Andrews was released in its entirety. *Id.* ¶ 14.

On May 24, 2013, Mr. Andrews appealed the FBI's response to his third FOIPA request to DOJ's Office of Information Policy ("OIP"). *Id.* ¶ 17. In his appeal, Mr. Andrews explained why the Form 211 that he believed was being withheld—specifically the form with the information completed by the IRS—should not be subject to a FOIA exemption. *Id.* On August 30, 2013, OIP informed Mr. Andrews that it was affirming the FBI's action in response to his requests, explained that the FBI's reference to a FOIA exemption is a standard paragraph in its response letters, and stated that the FBI "had released one page in full" to Mr. Andrews on August 31, 2012. *Id.* ¶ 19. According to DOJ, this latter statement was in error because that release had actually consisted of a four page document. *Id.*

On June 9, 2014, Mr. Andrews, proceeding *pro se*, filed his complaint. *See* Compl., ECF No. 1: On September 5, 2014, DOJ filed its motion for summary judgment.

*See* Mot., ECF No. 9. DOJ also submitted a statement of facts in support of that motion. *See* Def.'s SMF, ECF No. 9–1. On October 10, 2014, Mr. Andrews filed his opposition to the motion for summary judgment. *See* Opp. to Mot. ("Opp."), ECF No. 11. Mr. Andrews did not provide a response to DOJ's statement of material facts. On October 24, 2014, the Department of Justice filed a reply brief. *See* Reply in Supp. of Mot. ("Reply"), ECF No. 12. DOJ's motion is ripe for adjudication.

## II. Summary Judgment in a FOIA Case

Summary judgment is granted when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Waterhouse v. District of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002). In determining whether a genuine issue of fact exists, the court must view all facts in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "FOIA cases typically and appropriately are decided on motions for summary judgment." *Gold Anti–Trust Action Comm. v. Bd. of Governors of Fed. Reserve Sys.*, 762 F.Supp.2d 123, 130 (D.D.C. 2011)(quotation marks omitted). Under FOIA, all underlying facts and inferences are analyzed in the light most favorable to the FOIA requester; as such, only after an agency proves that it has fully discharged its FOIA obligations is summary judgment appropriate. *Moore v. Aspin*, 916 F.Supp. 32, 35 (D.D.C. 1996) (citing *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1350 (D.C. Cir. 1983)).

In considering a motion for summary judgment under FOIA, the court must conduct a *de novo* review of the

record. *See* 5 U.S.C. § 552(a)(4)(B). The court may award summary judgment on the basis of information provided by the agency in affidavits. *See Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981); *Vaughn v. Rosen*, 484 F.2d 820, 826–28 (D.C. Cir. 1973). Agency affidavits must be "relatively detailed and nonconclusory." *SafeCard Servs. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quotation marks omitted). Such affidavits are "accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *Id.* (quotation marks omitted).

The rules of this Court provide that "[i]n determining a motion for summary judgment, the Court may assume facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." D.D.C.R. 7(h).

## III. Analysis

DOJ's motion is based upon its claim to have conducted an adequate search in response to Mr. Andrews' FOIPA requests and that it provided the one responsive document located in full to Mr. Andrews. *See* Mot., ECF No. 9 at 5–10.

### A. Law Regarding the Adequacy of a Search.

 The standard for assessing the adequacy of an agency's search in response to a FOIA request is well-established:

> To prevail on a motion for summary judgment regarding the adequacy of a search, an agency must show "beyond material doubt ... that it has conducted a search reasonably calculated to uncover all relevant documents." "The issue is not whether any further documents might conceivably exist but rather whether the government's search for responsive documents was

adequate." "The standard is one of reasonableness, and is 'dependent upon the circumstances of the case.'" "To establish the adequacy of its search, an agency may rely on affidavits and declarations which are 'relatively detailed and nonconclusory and ... submitted in good faith.'"

*Shurtleff v. U.S. Environmental Protection Agency*, 991 F.Supp.2d 1, 9 (D.D.C. 2013) (quoting *Weisberg*, 705 F.2d at 1351) (alterations in original). If the requestor is able to produce countervailing evidence in response to the agency's affidavits, "'and if the sufficiency of the agency's identification or retrieval procedure is genuinely in issue, summary judgment is not in order.'" *Morley v. CIA*, 508 F.3d 1108, 1116 (D.C. Cir. 2007)(quoting *Founding Church of Scientology v. Nat'l Sec. Agency*, 610 F.2d 824, 836 (D.C. Cir. 1979).

 "[T]he fact that a particular document was not found does not demonstrate the inadequacy of a search." *Boyd v. Criminal Div. of U.S. Dept. of Justice*, 475 F.3d 381, 391 (D.C. Cir. 2007). Additionally, "the '[m]ere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search for them.'" *DeSilva v. U.S. Dep't of Hous. & Urb. Dev.*, 36 F.Supp.3d 65, 71 (D.D.C. 2014)(quoting *SafeCard Servs. v. SEC*, 926 F.2d at 1201).

### B. The FBI's Central Records System.

The FBI's CRS "enables the FBI to maintain information ... acquired in the course of fulfilling its ... law enforcement responsibilities." Declaration of David M. Hardy ("Hardy Decl."), ECF No. 9–2 ¶ 26. The CRS includes "administrative, applicant, criminal, personnel and other files compiled for law enforcement purposes," and "consists of a numerical sequence of

files broken down [by] subject matter." *Id.* The subject matter of a CRS file "may relate to an individual, organization, company, publication, activity or foreign intelligence matter (or program)." *Id.* The FBI's headquarters office ("FBIHQ") maintains certain CRS records while FBI field offices maintain those CRS records "that are pertinent to specific field offices." *Id.* In order to search the CRS, "the FBI uses . . . the Automated Case Support System ('ACS')." *Id.*

The ACS makes it possible to retrieve data from the CRS using alphabetically-arranged General Indices. *Id.* ¶ 27. "The General Indices consist of index cards on various subject matters that are searched either manually or though the automated indices." *Id.* There are two categories of General Indices:

 (a) A "main" entry—A "main" entry, or "main" file, carries the name corresponding with a subject of a file contained in the CRS.

 (b) A "reference" entry—A "reference" entry, sometimes called a "cross reference," is generally only a mere mention or reference to an individual, organization, or other subject matter, contained in a document located in another "main" file on a different subject matter.

*Id.* A search of the General Indices "to locate records concerning a particular subject, such as James Andrews, [is] made by searching the subject requested in the index." *Id.* ¶ 28.

"ACS consists of three integrated, yet separately functional, automated applications that support case management functions for all FBI investigative and administrative cases." *Id.* ¶ 30. The Investigative Case Management application "provides the ability to open, assign, and close investigative and administrative cases [and to] set, assign, and track leads." *Id.* ¶ 30(a).

Each new case is assigned a Universal Case File Number which is used by FBIHQ and all FBI field offices "that are conducting or assisting in the investigation." *Id.* The Electronic Case File application "serves as the central electronic repository for the FBI's official text-based documents." *Id.* ¶ 30(b). The Universal Index application provides "a complete subject/case index to all investigative and administrative cases." *Id.* ¶ 30(c). "The FBI does not index every name in its files; rather, it indexes only that information considered to be pertinent, relevant, or essential for future retrieval." *Id.* ¶ 31. Individual FBI Special Agents assigned to an investigation decide whether "to index names other than subjects, suspects, and victims." *Id.* Without an index "to this enormous amount of data, information essential to ongoing investigations could not be readily retrieved," and the agency's files "would thus be merely archival in nature." *Id.* "[T]he General Indices to the CRS are the means by which the FBI can determine what retrievable information, if any, [it] may have in its CRS files on a particular subject matter or individual, James Andrews." *Id.*

## C. The FBI's Search Yielded a Responsive Record.

In response to Mr. Andrews' April 9, 2012 request for a copy of "a Form 211 and a Form 11369 with my name on them" containing Claim Number 36–207–04–00607, as well as the supplemental information provided by Mr. Andrews, Def's SMF, ECF No. 9–1 ¶¶ 1–2, "the FBI conducted a search of the CRS to identify all potentially responsive files indexed to James Andrews that relate to the two forms sought by [him]. This search was conducted by searching [his] name and would include any variation of his first and last name that sound similar but are spelled differently than his name." Hardy

Decl. ¶ 32. This search resulted in one four page document which was provided to Mr. Andrews on August 31, 2012. *Id.* The FBI explained that "even though [it was] not exactly what [Mr. Andrews] requested . . . [it] is the only FBI record[ ] related to the subject of the request." *Id.*

In response to Mr. Andrews' September 12, 2012 request, "the FBI conducted a second search of the CRS in an effort to locate the form specifically identified by [Mr. Andrews] in his request. As a result of this second search, the FBI located the same four pages it located in its original search, which the FBI had released to [Mr. Andrews] in full on August 31, 2012." *Id.* ¶ 33. The FBI informed Mr. Andrews of this result in a November 2, 2012 letter in which it stated that records had been withheld pursuant to FOIPA. *Id.* ¶ 15. The FBI states that this statement was erroneous because "[n]o records were withheld from plaintiff." *Id.*

In response to Mr. Andrews' May 1, 2013 request, "the FBI conducted a third search of the CRS in another effort to locate the form specifically identified by [Mr. Andrews] in his request. As a result of this third search, the FBI was unable to locate the requested form and, once again, located the same four page document" that it had provided to Mr. Andrews on August 31, 2012. *Id.* ¶ 34.

The FBI concludes that Mr. Andrews "has been provided with all records responsive to his FOIPA requests to the FBI" and that "[a]fter a page by page review of responsive records, the FBI determined that the information in these rec-

ords was non-exempt; therefore, all pages were release[d] in full without redaction as there was no forseeable harm to an interest protected by a FOIA exemption." *Id.* ¶ 35.

Mr. Andrews does not challenge the sufficiency of the search, but states that the government's attempts to explain the November 2, 2012 response to his FOIA request is "vacuous and insufficient." Opp'n, ECF No. 11 ¶ 4. Mr. Andrews maintains that the FBI has withheld information under FOIA exemption (c)(1)[2] and states that if indictments are announced, a copy of his approved Form 211 may be provided to him. *Id.*

The government responds that Mr. Andrews' theory that the government withheld responsive agency records is incorrect because "[t]he FBI did not withhold responsive agency records, nor did it invoke—directly or indirectly—a FOIA exemption to withhold agency records." Reply, ECF No. 12 at 1–2.

 Based on the detailed declaration made in good faith by the Section Chief of the Record/Information Dissemination Section of the FBI's Records Management Division, the Court concludes that the FBI's three searches for records responsive to Mr. Andrews' FOIPA request were reasonably calculated to locate the document Mr. Andrews seeks. Further, in the absence of any evidence to the contrary put forth by Mr. Andrews or any reason to doubt the declaration—which is accorded a presumption of good faith, *see SafeCard*, 926 F.2d at 1200, the Court accepts the

---

**2.** 5 U.S.C. § 555(c)(1) provides as follows:

Whenever a request is made which involves access to records described in subsection (b)(7)(A) and—
(A) the investigation or proceeding involves a possible violation of criminal law; and
(B) there is reason to believe that (i) the subject of the investigation or proceeding is

not aware of its pendency, and (ii) disclosure of the existence of the records could reasonably be expected to interfere with enforcement proceedings,
the agency may, during only such time as that circumstance continues, treat the records as not subject to the requirements of this section.

FBI's explanation that the reference to withheld documents in its November 2, 2012 letter was an error. The Court also takes note of the documentation in the record that corroborates this explanation. The Court concludes that there is no genuine issue of material fact as to whether the record responsive to Mr. Andrews' FOIPA request was released to him in full, and that it was in fact released to him in full.

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS** DOJ's motion for summary judgment. An appropriate Order accompanies this Memorandum Opinion.