# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued December 14, 2006        Decided June 1, 2007

No. 05-5207

HAROLD MARTIN,
APPELLANT

v.

DEPARTMENT OF JUSTICE, ET AL.,
APPELLEES

———

Consolidated with
06-5048

———

Appeals from the United States District Court
for the District of Columbia
(No. 04cv00697)
(No. 96cv02866)

———

*Edwin E. Huddleson, III* argued the cause and filed the briefs for appellants.

*Alan Burch*, Assistant U.S. Attorney, argued the cause for appellee United States Department of Justice, et al.  On the brief were *Jeffrey A. Taylor*, U.S. Attorney, and *R. Craig Lawrence* and *Kathleen M. Konopka*, Assistant U.S. Attorneys. *Claire M. Whitaker* and *Michael J. Ryan*, Assistant U.S.

Attorneys, entered appearances.

*Richard J. Osterman, Jr.*, Assistant General Counsel, Federal Deposit Insurance Corporation, and *Lawrence H. Richmond* and *Kathleen V. Gunning*, Counsel, were on the brief for appellee Federal Deposit Insurance Corporation. *Colleen J. Boles*, Senior Counsel, and *Jack D. Smith, Jr.* and *Jaclyn C. Taner*, Counsel, entered appearances.

*Norman J. Chachkin*, *Michael S. Fried*, and *Arthur B. Spitzer* were on the brief for *amici curiae* American Civil Liberties Union of the National Capital Area, et al. in support of appellants.

Before: ROGERS, BROWN and GRIFFITH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* GRIFFITH.

GRIFFITH, *Circuit Judge*: We review this consolidated appeal after ten years of litigation during which appellants Harold Martin and the National Association of Criminal Defense Lawyers, Inc. (the "NACDL") have repeatedly attempted to use the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to obtain government documents that they allege were wrongfully withheld under *Brady v. Maryland*, 373 U.S. 83 (1963) during Martin's criminal conviction in Texas in 1994. Before us are appeals of summary judgments by the U. S. District Court for the District of Columbia in favor of the Federal Bureau of Investigation ("FBI"), the Executive Office of the United States Attorneys ("EOUSA"), and the Federal Deposit Insurance Corporation ("FDIC" or "the Corporation"), each of which denied appellants' FOIA requests. We affirm the district court's judgment that Martin is collaterally estopped from further litigation in pursuit of one of the requested documents and that the remaining requested documents were properly withheld by

the government under exemptions to FOIA.

**I.**

In 1994, Harold Martin was convicted by a jury in Texas of thirty counts of fraud-related crimes involving a loan scheme targeting Broadway Bank & Trust Company ("Broadway Bank") that caused its financial failure. *See United States v. Martin*, Crim. No. 93-0316, Mem. Op. at 2 (N.D. Tex. May 21, 1999). Martin was sentenced to more than ten years in prison and ordered to pay more than twenty-seven million dollars in restitution. *See id*. His conviction was affirmed on appeal. Since that time, Martin has with limited success sought government documents that he alleges were wrongfully withheld during his trial and that would, according to his argument, at least affect his sentencing and possibly exculpate him entirely. Martin has pursued two avenues for relief. First, in a post-conviction collateral challenge to his sentence, he alleged prosecutorial misconduct, prompting the district court in Texas to obtain and review the documents that Martin alleged were improperly withheld. The court found nothing in these documents that would affect Martin's guilt or sentencing, and therefore nothing to demonstrate government wrongdoing. Based on those findings, Martin's post-conviction challenge was dismissed. Second, Martin (and eventually the NACDL) made numerous requests to obtain these same documents from the government through FOIA, alleging that they demonstrate government wrongdoing. This appeal involves those requests. We first summarize the Texas federal district court's review of Martin's claim of prosecutorial misconduct. That court's conclusion that no prosecutorial misconduct occurred bears on appellants' present claim that the documents they seek are of public interest because they demonstrate government wrongdoing. We then summarize the procedural history of the FOIA requests themselves.

In 1997, three years after his conviction, Martin asked the district court that sentenced him to "vacate, set aside or correct [his] sentence" pursuant to 28 U.S.C. § 2255, "claiming . . . that [his] sentence was imposed in violation of the Constitution or laws of the United States . . . or is otherwise subject to collateral attack." Martin alleged that the prosecution had improperly withheld potentially exculpatory evidence relating to a main government witness, John Generelli (a former Vice President at Broadway Bank), who was allegedly investigated for wrongful conduct relating to the same bank fraud for which Martin was tried. Martin argued that this alleged withholding of evidence contravened the rule in *Brady v. Maryland*, 373 U.S. 83 (1963), that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution," *id.* at 87. A magistrate judge held a hearing on Martin's § 2255 motion, *see United States v. Martin*, Crim. No. 93-0316 (N.D. Tex. Jul. 23, 1998), and ordered the government to present testimony regarding "the existence of any additional documents relating to Generelli in the possession of the government and/or FDIC [before Martin's criminal trial.]" *Id.* at 11.

In response to the court's order, the Department of Justice ("DOJ") directed the FBI and FDIC to provide the Department with all documents pertaining to the financial failure of Broadway Bank, *see United States v. Martin*, Crim. No. 93-0316, Mem. Op. at 4 n.5 (N.D. Tex. May 21, 1999) (citation omitted), and subsequently delivered to the magistrate judge all documents relating to Generelli that the Department received from those agencies. *Id.* The DOJ also produced documents culled from its own review of related FBI files in Newark, New Jersey—where Broadway Bank was located—and Dallas,

Texas—where Martin was tried and convicted.[1] *Id.* Following an evidentiary hearing, the magistrate judge found that the documents, "viewed most liberally, establish that Generelli was suspected of engaging in bank fraud in the [fraudulent loan scheme for which Martin was convicted] and other loan programs," *id.* at 17. The court denied Martin's § 2255 motion, however, concluding that he had "failed to establish as he must that the government's failure to disclose the alleged *Brady* documents materially affected his conviction or sentence." *Id.* at 18.

Martin's unsuccessful post-conviction litigation in federal district court in Texas is prologue to the matter before us: the FOIA appeals. Beginning in 1996, even before filing his § 2255 motion, Martin made FOIA requests of the FBI, the EOUSA, and the FDIC to obtain the same information he argued had been wrongfully withheld at his trial and that the district court had reviewed in dismissing his § 2255 motion. The record before us is congested in large part as a result of Martin's failure to exhaust all available administrative remedies in his pursuit of these documents under FOIA, resulting in numerous premature attempts to seek relief in the federal district and appellate courts for the District of Columbia. Thankfully, it is not necessary for us to recount Martin's decade-long colloquy with those courts and the involved government agencies. Suffice it to say that, with regard to the FOIA requests on appeal before us, the extensive case history only reveals Martin's procedural missteps and subsequent corrections.

---

[1] Redacted versions of these documents presumably remain in the public archived records of the United States District Court for the Northern District of Texas, prompting the government to argue that, at least with respect to some of the materials appellants seek, their claim is moot. *See* Appellee FDIC Br. at 26-29.

## A. The 1991 Report

Martin seeks a 1991 "Report of Apparent Crime" filed by Broadway Bank with the FDIC ("1991 Report") that describes the fraudulent loan scheme for which Martin was convicted and mentions former Senior Vice President of Broadway Bank, John Generelli. In 1998, the District Court for the District of Columbia directed the FDIC to release reasonably segregable, non-exempt portions of the 1991 Report. *Martin v. FDIC*, Civ. No. 97-1368 (D.D.C. Dec. 11, 1998). The FDIC complied, redacting information it argued was private and therefore exempt from disclosure under FOIA Exemptions 6 and 7(C). *See* 5 U.S.C.§ 552(b)(6), (b)(7)(C) (FOIA Exemptions 6 and 7(C), respectively, exempt from required disclosure "personnel . . . files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy" and "records or information compiled for law enforcement purposes . . . [the] production of [which] could reasonably be expected to constitute an unwarranted invasion of personal privacy."). Following this limited disclosure, the district court (which had stayed its ruling to allow the government to release a redacted version of the document) granted summary judgment against Martin. *Martin v. FDIC*, Civ. No. 97-1368 (D.D.C. Sept. 1, 2000). Intent on obtaining the entire document without redactions, Martin appealed, but then curiously filed a motion to dismiss the appeal, which this Court granted. *Martin v. FDIC*, Civ. No. 00-5391 (D.C. Cir. Dec. 13, 2001). Martin eventually returned to district court, still in pursuit of the 1991 Report without redactions. Again, the district court granted summary judgment against him, holding that this Court's dismissal of his appeal (at his own request) foreclosed any future challenge to the district court's ruling. *Martin v. DOJ, et al.*, No. 96-2866, Mem. Op. at 4 n.1 (D.D.C. Mar. 28, 2005) ("*March 2005 Opinion*"). Martin appeals the district court's latest judgment against him.

## B. The 1992 Memorandum

Martin and the NACDL seek a December 14, 1992 Memorandum from an FDIC Investigations Specialist to legal counsel concerning a bond claim arising out of the fraudulent loan scheme for which Martin was convicted.[2] The FDIC described the 1992 Memo as "a 49 page confidential case memorandum . . . from an FDIC investigator to an attorney in the FDIC's Professional Liability Section regarding Broadway Bank & Trust Company," on which each page is stamped "Attorney Work Product Privileged Prepared Under Direction of Counsel in Contemplation of Litigation Attorney/Client Privileged." *March 2005 Opinion* at 4 (citing Declaration of Barbara A. James at 3, ¶ 12) (quotation marks omitted). Appellants sought "all information about Generelli in the [1992 Memo]," *id.*, but the district court entered judgment for the FDIC, holding that it had properly withheld the entire 1992 Memo on the basis of FOIA Exemption 5, which "applies to materials that normally are privileged in the civil discovery context, including those protected by the attorney work product privilege . . . ." *id.* at 4-5 (citations omitted); *see also Nat'l Ass'n of Crim. Def. Lawyers v. DOJ*, Civ. No. 04-0697 (D.D.C. Mar. 28, 2005) (granting judgment against the NACDL for the

---

[2] In April 2004, the NACDL filed its own FOIA complaint against the FDIC seeking "[a]ll information about Generelli" in the 1992 FDIC Memo. The NACDL's argument resembled Martin's: The government violated Martin's rights under *Brady* by withholding records related to a prosecution witness (Generelli) suspected of wrongdoing in the bank fraud for which Martin was convicted and disclosure of the requested information is in the public's interest because it would further the NACDL's study of prosecutorial misconduct. *See NACDL v. DOJ*, Civ. No. 04-0697, Compl. ¶ 13.

same reasons described in the *March 2005 Opinion*). Martin and the NACDL appeal these judgments.

## C. The FBI Records

Martin also seeks information held by the FBI related to Generelli. In 1998, Martin requested all records withheld by the FBI that "would show that the Broadway Bank's former Senior Vice President John Generelli was suspected of wrongdoing in the $21.5 million bank fraud for which plaintiff Harold Martin was convicted." *Martin v. DOJ*, Civ. No. 96-2866, Am. Compl. ¶ 3(b). In response, the FBI requested that Martin either show proof of death or privacy waivers for Generelli and added that absent such, the requested information must be withheld pursuant to FOIA Exemptions 6 and 7(C). Martin could not provide proof of death or produce a privacy waiver for Generelli, and the FBI determined that release of the requested information "would not add to the public's understanding of the inner workings of the government," but "would announce to the world the extent to which [Generelli] [was] of interest to the FBI . . . [potentially] subject[ing] [him] to embarrassment, humiliation, and unwarranted public attention." *March 2005 Opinion* at 9 (citing FBI's Motion for Summary Judgment, Decl. of Keith R. Gehle ¶ 16). Martin appealed the FBI's decision to the Office of Information and Privacy ("OIP") at the DOJ, which affirmed.

Shortly thereafter, Martin submitted a FOIA request to the EOUSA for "*Brady* material on Generelli." [J.A 504] The EOUSA's response mirrored that of the FBI: Without proof of Generelli's death or a privacy waiver, the EOUSA would categorically invoke FOIA Exemptions 6 and 7(C) to protect a third party's interests. Martin's appeal to OIP of the EOUSA's decision was dismissed as duplicative of his prior appeal of the FBI's decision to withhold the same records. Having exhausted

his administrative remedies in pursuit of these records, Martin brought his claim to the district court, which entered summary judgment against him, concluding that the FBI and EOUSA properly withheld documents containing private information about third parties because Martin's asserted interest in the allegedly exculpatory evidence was "private in nature," *March 2005 Opinion* at 12 (citing *Oguaju v. United States*, 288 F.3d 448, 450 (D.C. Cir. 2002), *vacated and remanded on other grounds*, 541 U.S. 970 (2004), *reinstated*, 378 F.3d 1115 (D.C. Cir. 2004) (citation omitted) ("Oguaju's personal stake in using the requested records to attack his convictions does not count in the calculation of the public interest")), and success in obtaining the requested documents would therefore "further no one's interest but perhaps [Martin's] own," *id.* at 13. Absent the requisite showing of a public interest in Martin's FOIA request, the district court found no genuine issue of material fact with respect to the agencies' application of Exemption 7(C) to the Generelli records and therefore had no need to address the applicability of Exemption 6.

**II.**

Congress enacted FOIA in 1966 to grant a right of public access to governmental information "long shielded unnecessarily from public view" and authorized judicial enforcement of that right against "possibly unwilling official hands." *EPA v. Mink*, 410 U.S. 73, 80 (1973), *superseded by statute*, Freedom of Information Act, Pub. L. No. 93-502, § 2(a), 88 Stat. 1563 (1973). Recognizing, however, that the public's right to information was not absolute and that disclosure of certain information "may harm legitimate governmental or private interests," Congress created several exemptions to FOIA disclosure requirements. *Summers v. DOJ*, 140 F.3d 1077, 1080 (D.C. Cir. 1998). The interests asserted by the government in this case, for example, may be overcome upon a proper showing

by appellants that the document protected under Exemption 5 would be "routinely" or "normally" disclosed upon a showing of relevance, *see FTC v. Grolier Inc.*, 462 U.S. 19, 26 (1983) (citation omitted), and that the documents protected under Exemption 7(C) generated a sufficient public interest to outweigh counterveiling privacy interests, s*ee Boyd v. DOJ*, 475 F.3d 381, 386-87 (D.C. Cir. 2007) (citing *DOJ v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 762 (1989)).

Two crucial facts resolve this case. First, Martin has already litigated to conclusion the issues surrounding the 1991 Report and is collaterally estopped from further litigation of the same issues. Second, the federal district court in Texas has reviewed Martin's conviction pursuant to his § 2255 motion, and has held that the remaining requested documents do not contain *Brady* material. We need not address, therefore, whether a criminal defendant may use FOIA to access documents that may contain *Brady* material. The material in question here is either subject to principles of collateral estoppel or is, by judicial holding, not *Brady* material. The former is precluded from our consideration altogether. The latter is protected from disclosure under FOIA Exemption 5, or of too little public interest to outweigh the government's substantial privacy interests under FOIA Exemption 7(C). We therefore affirm the district court's conclusion that the government properly denied each of appellants' FOIA requests and do not reach the district court's broader conclusions about the relationship between FOIA and *Brady*.

## A. The 1991 Report

Martin alleges that the 1991 Report demonstrates that his fraud conviction was tainted by prosecutorial misconduct. In response, the FDIC asserts that Martin is collaterally estopped from challenging its partial withholding of the 1991 Report

because his previous FOIA request for the document was fully litigated in *Martin v. FDIC*, Civ. No. 97-1368 (D.D.C. Sept. 1, 2000). We agree, and therefore need not reach the balancing test we would otherwise employ to assess the merits of Martin's claim.

Collateral estoppel requires three elements, each of which is present here: "[1], the same issue now being raised must have been contested by the parties and submitted for judicial determination in the prior case[; 2], the issue must have been actually and necessarily determined by a court of competent jurisdiction in that prior case [; and] [3], preclusion in the second case must not work a basic unfairness to the party bound by the first determination." *Yamaha Corp. of Amer. v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992).

First, Martin's claim in this case that the government has improperly withheld the 1991 Report based upon FOIA Exemption 7(C) was "contested by the parties and submitted for judicial determination in the prior case," *id*.[3] In the prior case, Martin alleged that FDIC investigators suspected that wrongdoing by Generelli and others caused the bank fraud for which Martin was convicted. Martin claimed that the government violated his *Brady* rights by withholding records detailing these suspicions, and that these documents constituted *Brady* material that should be released under FOIA. The FDIC

---

[3] According to Martin's affidavit in the prior case, his request for documents included the 1991 Report. "Of the records plaintiff sought in the supplemental complaint, the FDIC has established that the 1991 [FDIC] Report of Apparent Crime in which Mr. Generelli is mentioned was released with redactions in a separate action, *Martin v. FDIC*, Civ. Action No. 97-1368 (Sept. 1, 2000), which was dismissed with prejudice." *Martin v. DOJ*, Civ. No. 96-2866, 4, n.1 (D.D.C. 2005) (citing Second Declaration of Frederick L. Fisch at 17 ¶ 47).

withheld the unredacted report under FOIA Exemption 7(C). Here, Martin makes the same claims and seeks "all information about Generelli in the Broadway Bank's March 22, 1991 Report of Apparent Crime (FBI "Newark File" No. 29B-NK-69023-1 and -2)," *Martin v. DOJ*, Civ. No. 96-2866, 2nd Am. Compl. ¶ 5, *i.e.*, the same 1991 Report he had previously requested, which the FDIC again withholds under Exemption 7(C). In both cases, Martin vigorously contested the withholding of the unredacted document.

Second, the issue has been "determined by a court of competent jurisdiction," *Yamaha Corp.*, 961 F.2d at 254. In the previous litigation over the 1991 Report, the District Court for the District of Columbia considered the parties' respective motions for summary judgment and rejected Martin's argument that the document should be released without redactions because it contained *Brady* material. Instead, the court ordered the FDIC to release reasonably segregable, non-exempt portions of the 1991 Report to Martin, and the FDIC complied. It then granted summary judgment to the FDIC on the FOIA claims and Martin appealed. Because we ultimately dismissed that appeal, the district court's decision that the FDIC had properly invoked Exemption 7(C) became the final judgment regarding Martin's request for this document. It is well established that a lower court judgment may have preclusive effect despite the lack of appellate review. *See Johnson Steel Street-Rail Co. v. William Wharton, Jr., & Co.*, 152 U.S. 252, 261 (1894). *See also* RESTATEMENT (SECOND) OF JUDGMENTS § 13 (1982) ("[F]or purposes of issue preclusion . . . 'final judgment' includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect."); *Yamaha Corp.*, 961 F.2d at 254 ("When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action

between the parties." (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 27 (1982))); *McLaughlin v. Bradlee*, 803 F.2d 1197, 1201 (D.C. Cir. 1986) ("[O]nce a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980))).

Third, we see no "basic unfairness" that results from preclusion of Martin's claim for the 1991 Report based on the final decision of the district court in *Martin v. FDIC*, Civ. No. 97-1368 (D.D.C. Sept. 1, 2000). His incentives to litigate the point now disputed were no less present in the prior case, nor are the stakes of the present case of "vastly greater magnitude." *See Yamaha Corp.* 961 F.2d at 254. We see no risk that the "prior proceedings were seriously defective." *See Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 333 (1971). Martin has had ample opportunity to have his challenge heard and we find no circumstances sufficient to exempt him from the rules of preclusion. The district court therefore properly held that Martin was collaterally estopped from challenging the FDIC's withholding of the unredacted version of the 1991 Report.

## B. The 1992 Memorandum

Both Martin and the NACDL seek the 1992 Memo because they allege that it, too, contains *Brady* material. The FDIC withheld the 1992 Memo under FOIA Exemption 5, which protects from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5); *Martin v. Office of Special Counsel, Merit Sys. Prot. Bd.*, 819 F.2d 1181, 1184 (D.C. Cir. 1987). As the district court correctly observed, "[t]his provision applies to

materials that normally are privileged in the civil discovery context, including those protected by the attorney work product privilege . . . ." *March 2005 Opinion* at 4-5 (citing, *inter alia*, *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975); *Martin v. Office of Special Counsel*, 819 F.2d 1181, 1184 (D.C. Cir. 1987)). The district court found that the 1992 FDIC Memo was protected attorney work-product based on uncontroverted evidence that it was prepared by an FDIC investigator at the direction of an FDIC attorney in anticipation of litigation. The memo contains extensive legal analyses of potential claims available to the FDIC concerning fraudulent loans. We therefore agree with the district court that the 1992 Memo qualified for protection in its entirety as attorney work-product because it contains facts "integral to the legal analyses and discussions of investigation strategy." *Judicial Watch, Inc. v. DOJ*, 432 F.3d 366, 371 (D.C. Cir. 2005) ("If a document is fully protected as work product, then segregability is not required.").

Appellants argue that the privilege asserted by the FDIC was waived when the DOJ gave the 1992 Memo to Martin's defense counsel in the § 2255 proceeding. We disagree. The FDIC made no disclosure to Martin's counsel. Rather, the FDIC provided another federal government agency, the DOJ, with relevant documents, including the 1992 FDIC Memo. Such production of privileged information cannot be a waiver of the privilege. *See* 12 U.S.C. § 1821(t) ("A covered agency . . . shall not be deemed to have waived any privilege applicable to any information by transferring that information to or permitting that information to be used by . . . any other agency of the Federal Government . . . .").

Next, appellants argue that, even if the 1992 Memo might ordinarily be protected under Exemption 5, it must be disclosed because it contains *Brady* material and therefore "should be disclosed routinely to the government's opponents in

litigation, not shielded by [Exemption 5]." Appellants' Br. at 24 (citing *Strickler v. Greene*, 527 U.S. 263, 281 (1999)). Appellants are correct that FOIA Exemption 5 will be overcome by a showing that requested documents "would be 'routinely' or 'normally' disclosed upon a showing of relevance,"*FTC v. Grolier*, 462 U.S. at 26. Appellants' argument is fatally flawed, however, because they have failed to demonstrate that the 1992 Memo contains any *Brady* material. The federal district court in Texas denied Martin's § 2255 motion because he "failed to establish as he must that the government's failure to disclose the alleged *Brady* documents materially affected his conviction or sentence." *United States v. Martin*, Crim. No. 93-0316, Mem. Op. at 18 (N.D. Tex. May 21, 1999). Appellants effectively acknowledge this fundamental problem with their claims when they attempt to invent a new legal category of "intermediate *Brady* material." Appellants' Br. at 21-22. No such category exists. If information is not material to conviction or sentencing, it cannot be *Brady* material of any type.

Because the requested document is attorney work-product that would not have been subject to routine disclosure, it is properly protected under Exemption 5. We therefore need not determine whether the memo was also properly withheld from disclosure under Exemptions 6 and 7(C).

## C. The FBI Records

Martin's request of the FBI is similar to his request of the FDIC. He seeks "*Brady* material pertaining to Generelli." Second Am. Compl. ¶ 2. Again we conclude that this is an improper characterization of the requested material. No *Brady* material is at issue before us. Therefore, we need only weigh the government's claim of exemption against any potential public interest in non-*Brady* material. The FBI withheld the requested information under FOIA Exemption 7(C), which protects

"records or information compiled for law enforcement purposes" from disclosure if their production "could reasonably be expected to constitute an unwarranted invasion of personal privacy," 5 U.S.C. § 552(b)(7)(C), and argues that Martin has failed to provide any counterbalance to the significant privacy interests asserted by the government. We agree.

The Supreme Court has observed that the statutory privacy right protected by Exemption 7(C) is not so limited as others, *see DOJ v. Reporters Comm. for Freedom of Press*, 489 U.S. at 762. Contrasting Exemption 7(C) with Exemption 6, which requires withholding of personnel and medical files only if disclosure "would constitute a clearly unwarranted invasion of personal privacy," the Court recently emphasized Exemption 7(C)'s comparative breadth by noting that it does not include the adverb "clearly," and substitutes "could reasonably be expected to constitute [an unwarranted invasion of privacy]" for "would constitute" such an invasion. *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 166 (2004) (citing *Reporters Comm.*, 489 U.S. at 756). Because "[l]aw enforcement documents . . . often contain information about persons . . . whose link to the official inquiry may be the result of mere happenstance," the Court observed, "[t]here is special reason . . . to give protection to [] intimate personal data, to which the public does not have a general right of access in the ordinary course." *Id.* (citing *Reporters Comm.*, 489 U.S. at 780).

We also note that privacy interests are particularly difficult to overcome when law enforcement information regarding third parties is implicated. *See Reporters Comm.*, 489 U.S. at 780 ("privacy interest protected by Exemption 7(C) is . . . at its apex while the FOIA-based public interest in disclosure is at its nadir" when requester seeks a private citizen's criminal history information within the government's control); *see also Fitzgibbon v. CIA*, 911 F.2d 755, 768 (D.C. Cir. 1990) (rarely

does a public interest outweigh an individual's privacy interest when law enforcement information pertaining to an individual is sought). "[T]hird parties who may be mentioned in investigatory files" and "witnesses and informants who provide information during the course of an investigation" have an "obvious" and "substantial" privacy interest in their information. *Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 894 (D.C. Cir. 1995). Indeed, the Supreme Court has made clear that requests for such third party information are strongly disfavored:

> The FOIA's central purpose is to ensure that the Government's activities be opened to the sharp eye of public scrutiny, not that information about private citizens that happens to be in the warehouse of the Government be so disclosed. Thus . . . in none of our cases construing the FOIA have we found it appropriate to order a Government agency to honor a FOIA request for information about a particular private citizen.

*Reporters Comm.*, 489 at 774. Martin's allegation that "[o]nly *de minimis* . . . privacy interests are implicated by [his] FOIA requests," because "[o]pen public court opinions . . . describe the gist of the *Brady* material," Appellants' Br. at 28, is unavailing. In *Reporters Committee*, the Court ruled that a person's privacy interest in law enforcement records that name him is not diminished by the fact that the events they describe were once a matter of public record. *See Reporters Comm.*, 489 U.S. at 779-80 (protecting privacy interests in "rap sheets").

Our conclusion that there is a substantial privacy interest in protecting the FBI records from disclosure does not, however, complete our inquiry. The statutory term, "unwarranted," which modifies the invasion of privacy prohibited under Exemption 7(C), requires us to balance the asserted privacy interests against

the potential public interest in disclosure. *See Favish*, 541 U.S. at 171 (citing *Reporters Comm.*, 489 U.S. at 762). As we have recently clarified in a similar case,

> In order to trigger the balancing of public interests against private interests, a FOIA requester must (1) show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake, and (2) show the information is likely to advance that interest. If the public interest is government wrongdoing, then the requester must produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred.

*Boyd*, 475 F.3d at 387 (quoting *Favish*, 541 U.S. at 172, 174) (internal quotation marks omitted). In *Boyd*, we concluded that "[u]nsubstantiated assertions of government wrongdoing . . . do not establish 'a meaningful evidentiary showing,'" *Boyd*, 475 F.3d at 388 (quoting *Favish*, 541 U.S. at 175), and with no "'counterweight on the FOIA scale for the court to balance against the cognizable privacy interests in the requested records,' the challenge to the government's invocation of Exemption 7(C) fails," *id.* (quoting *Favish*, 541 U.S. at 174-75). As we have noted, Martin's claim of *Brady* violations fails. Without determining whether evidence of a *Brady* violation would merit FOIA disclosure under these circumstances, we need only conclude for the purposes of this case that Martin's "bare suspicion" was fully litigated and rejected by a court of competent jurisdiction when it denied his petition for post-conviction release. The documents withheld by the government were not material to Martin's guilt or punishment.

The district court thus correctly held that information regarding a private citizen, John Generelli, housed in law enforcement files was properly protected pursuant to FOIA Exemption 7(C).

## III.

Accordingly, we affirm the grant of summary judgment in favor of the government without reaching the district court's ruling that Brady information is never available under FOIA. That issue remains an open question in this circuit.

*So ordered.*