NEWMAN, Circuit Judge,
dissenting.
The court today authorizes the Patent and Trademark Office, an administrative agency within the Department of Commerce, to override and void the final judgment of a federal Article III Court of Appeals. The panel majority holds that the entirety of these judicial proceedings can be ignored and superseded by an executive agency’s later ruling.
This holding violates the constitutional plan, for “Judgments, within the powers vested in courts by the Judiciary Article of the Constitution, may not lawfully be revised, overturned or refused faith and credit by another Department of Government.” Chi. & S. Air Lines, Inc. v. Waterman S.S. Comp., 333 U.S. 103, 113, 68 S.Ct. 431, 92 L.Ed. 568 (1948).
These judicial proceedings started with trial in the district court and the district court’s final judgment, then appeal to the Federal Circuit and our appellate final judgment, followed by denial of rehearing and denial of rehearing en banc, followed by issuance of this court’s mandate, fol *1348 lowed by denial of certiorari.[1] This court remanded to the district court for the purpose of reviewing post-judgment damages, and the district court did so. That decision is the subject of this appeal.
My colleagues now hold that this entire litigation and decisional panoply is negated by the later decision of the Patent and Trademark Office of the issue of validity. My colleagues hold that the prior final adjudication by this court of validity and infringement is irrelevant, and that the later decision by the PTO overrides and displaces our prior adjudication, depriving the parties to that adjudication of their binding judgments.
This holding violates the rules of finality, for judgments of Article III courts are “final and conclusive upon the rights of the parties,” Gordon v. United States, 117 U.S. 697, 702, 1864 WL 11666 (1864); Plant v. Spendthrift Farm, Inc., 514 U.S. 211, 226, 115 S.Ct. 1447, 131 L.Ed.2d 328 (1995) (same).
I respectfully dissent.
I
The Constitutional Plan
An agency of the executive branch cannot override or revise or ignore, or deny faith and credit to, the judgment of an Article III court.
The record of history shows that the Framers crafted this charter of the judicial department with an expressed understanding that it gives the Federal Judiciary the power, not merely to rule on cases, but to decide them, subject to review only by superior courts in the Article III hierarchy — with an understanding, in short, that a judgment conclusively resolves the case because a ‘Judicial Power’ is one to render dispositive judgments.
Plant, 514 U.S. at 218-19, 115 S.Ct. 1447 (internal quotations omitted, emphasis in original).
My colleagues hold that a PTO reexamination decision, made after final adjudication of patent validity in the district court and the Federal Circuit, negates the prior judicial decision. However, the constitutional structure does not permit the executive branch to override judgments of the courts. The Constitution “prohibits one branch from encroaching on the central prerogatives of another.” Miller v. French, 530 U.S. 327, 342, 120 S.Ct. 2246, 147 L.Ed.2d 326 (2000).
This allocation of authority is not casual or perfunctory; it is “an inseparable element of the constitutional system of checks and balances.” N. Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 58, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). The Court has explained:
[T]he doctrine of separation of powers is a structural safeguard rather than a remedy to be applied only when specific harm, or risk of specific harm, can be identified. In its major features (of which the conclusiveness of judicial judgments is assuredly one) it is a prophylactic device, establishing high walls *1349 and clear distinctions because low walls and vague distinctions will not be judicially defensible in the heat of inter-branch conflict.
Plant, 514 U.S. at 239, 115 S.Ct. 1447 (emphasis in original).
The issue is not whether patents can be reexamined in PTO proceedings; of course they can. However, the constitutional framework requires that when there has been a prior judicial determination of the issue of patent validity, the conclusiveness of judicial rulings resolves the determination. Adjudications by the Judicial Branch bind all three branches of government. “Congress cannot vest review of the decisions of Article III courts in officials of the Executive Branch.” Plant, 514 U.S. at 218,115 S.Ct. 1447.
The reasons are not simply a matter of the neat organization of government. “Article III, § 1 preserves to litigants their interest in an impartial and independent federal adjudication of claims within the judicial power of the United States.... ” Commodity Futures Trading Comm’n v. Schor, 478 U.S. 833, 850, 106 S.Ct. 3245, 92 L.Ed.2d 675 (1986). No statute, no constitutional interpretation, holds that an executive agency is not bound by a judicial decision. The Court reiterated in Miller v. French, 530 U.S. at 343, 120 S.Ct. 2246, that “an effort by a coequal branch to ‘annul a final judgment’ is ‘an assumption of Judicial power’ and therefore forbidden,” quoting Plant, 514 U.S. at 224, 115 S.Ct. 1447.
The PTO can neither invalidate, nor revive, a patent whose validity the court has adjudicated. Such administrative authority would render the court’s judgment no more than “advisory.” Article III courts are not permitted to render advisory opinions. Gordon, 117 U.S. at 702; see Sierra Club v. Morton, 405 U.S. 727, 732 n. 3, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972) (“Congress may not confer jurisdiction on Art. Ill federal courts to render advisory opinions ... because suits of this character are inconsistent with the judicial function under Art. III.”).
Article III courts “render no judgments not binding and conclusive on the parties and none that are subject to later review or alteration by administrative action.” Chi. & S. Air Lines, 333 U.S. at 113-14, 68 S.Ct. 431. This court’s ruling places itself and the PTO in conflict with the Constitution. The system of reexamination was designed for a quite different purpose, a purpose that did not incur constitutional conflict.
The purpose of the system of reexamination is to provide a mechanism for remedying errors in the initial PTO examination. During PTO reexamination patent claims can be revised and amended, an action not available in the courts. However, when the issue of validity of the claims has already been resolved in litigation, subsequent redetermination by the PTO is directly violative of the structure of government.
The system of patent reexamination was adopted in order to simplify or avoid litigation, not to increase the litigation burden. At the legislative hearings, Patent Commissioner Diamond explained:
Reexamination would eliminate or simplify a significant amount of patent litigation. In some cases, the PTO would conclude as a result of reexamination that a patent should not have issued. A certain amount of litigation over validity and infringement thus would be completely avoided.
*1350 Patent Reexamination: Hearing on S. 1679 Before the Senate Comm, on the Judiciary, 96th Cong. 15-16 (1979) (“Senate Hearings ”).
Reexamination’s proponents saw three principal benefits to the pending legislation, as summarized in Patlex Corp. v. Mossinghoff, 758 F.2d 594 (Fed.Cir.1985):
First, the new procedure could settle validity disputes more quickly and less expensively than the often protracted litigation involved in such cases.
Second, the procedure would allow courts to refer patent validity questions to the expertise of the Patent Office. See Senate Hearings at 1, wherein Senator Bayh said that reexamination would be “an aid” to the trial court “in making an informed decision on the patent’s validity.”
Third, reexamination would reinforce “investor confidence in the certainty of patent rights” by affording the PTO a broader opportunity to review “doubtful patents.” 126 Cong. Rec. 29,895 (1980) (statement of Rep. Kastenmeier).
Id. at 602. Senator Birch Bayh stressed the benefits of relieving the burdens of litigation on parties and courts:
Reexamination would allow patent holders and challengers to avoid the present costs and delays of patent litigation ... Patent reexamination will also reduce the burden on our overworked courts by drawing on the expertise of the Patent and Trademark Office.
126 Cong. Rec. 30,364 (1980).
The legislative record is extensive, and consistent, on the purpose of reduction in burden and expense of the administrative action compared with litigation, by enabling the PTO to correct errors in examination of the patent. Representative Hol-lenbeck testified:
As a result of the provision for reexamination, the potential conflict can be settled by the Patent Office itself in far shorter time and at far smaller expense to the challenger or to the patent holder than would be the case if the only recourse was through the court system.
126 Cong. Rec. 29,901 (1980). These goals were again recited in the House Report accompanying enactment of the reexamination statute:
Reexamination will permit efficient resolution of questions about the validity of issued patents without recourse to expensive and lengthy infringement litigation .... The reexamination of issued patents could be conducted with a fraction of the time and cost of formal legal proceedings and would help restore confidence in the effectiveness of our patent system.... It is anticipated that these measures provide a useful and necessary alternative for challengers and for patent owners to test the validity of United States patents in an efficient and relatively inexpensive manner.
H.R.Rep. No. 96-1307(1) at 3-4 (1980), reprinted in 1980 U.S.C.C.A.N. 6460, 6462-63. The entirety of the legislative record stresses reexamination as an alternative to litigation, not a dominating sequel to litigation.
The record shows the concern of the innovation community about the burdens of reexamination proceedings, and apprehension about the tactical opportunities for harassment. Commissioner Diamond responded to these concerns, pointing out the balance of benefits and burdens, and that the reexamination statute
carefully protects patent owners from reexamination proceedings brought for *1351 harassment or spite. The possibility of harassing patent owners is a classic criticism of some foreign reexamination systems and we made sure it would not happen here.
Hearings on H.R. 6933, 6934, 3806 & 215, Industrial Innovation & Patent & Copyright Law Amendments, 96th Cong., 2d Sess. 594 (1980).
With this recognition of the potential for abuse, if the proponents of reexamination had expected and intended the tactical gaming and harassment endorsed by the panel majority — such as here illustrated, where the Baxter patent was tied up in litigation and reexamination until the patent expired — surely some mention would have been made of this departure from the simplification and economy for which reexamination was intended.[2]
Instead, my colleagues announce that “Congress expected reexamination to take place concurrent with litigation, and that cancellation of claims during reexamination would be binding in concurring infringement litigation.” Maj. op. 1339. No hint can be found in the legislative record for an expectation of concurrent proceedings; no hint of an intent that a PTO reexamination decision would override a prior judicial decision rendered in either prior or concurrent litigation. There is no authority for the majority’s creative revision of the historical record.
The panel majority also errs in its understanding of the role of reexamination, which was well understood by the PTO, as stated in an amicus brief filed in response to an Order of the Federal Circuit in pending litigation:
Indeed, the doctrine of separation of powers clearly prevents any decision of the PTO from having the effect of overturning any decision of the lower court or [the Federal Circuit] respecting the ‘validity’ of the Eis patent.... Nowhere in that reexamination legislation does Congress provide that any order of the Commissioner in a reexamination proceeding will operate to vacate, modify, revise or overrule in any manner any order entered by a federal court. It is axiomatic, in view of the separation of powers doctrine, that a decision of the *1352 PTO, as part of the Executive Branch of the government, does not and cannot frustrate or derogate in any way judgments of the courts as part of the Judicial Branch.
Amstar Corp. v. Envirotech Corp., Nos. 1986-1340, -1360 (Fed.Cir.1986), Amicus Curiae Br. for the Comm’r of Patents & Trademarks, 1986 WL 734249, at *9-10.
The reexamination statute does not provide that a PTO reexamination decision will override the judicial decision. It must be assumed that the legislators did not violate the rules of either separation of powers or judicial finality. See INS v. St. Cyr, 533 U.S. 289, 300 n. 12, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001) (We must “not lightly assume that Congress intended to infringe constitutionally protected liberties or usurp power constitutionally forbidden it.”). The role of patent reexamination is not to alter a final adjudication by the courts.
If it were intended that PTO reexamination would override prior judicial decisions, it is inconceivable that no one would have mentioned it in the legislative process. If it were contemplated, through patent reexamination, to negate the “conclusiveness of judicial judgments,” Plaut, 514 U.S. at 239, 115 S.Ct. 1447, this departure from the constitutional plan would have occasioned comment.
My colleagues attempt to avert the constitutional challenge presented by their ruling, by suggesting that here there was no final decision, citing as authority John Simmons Co. v. Grier Brothers Co., 258 U.S. 82, 42 S.Ct. 196, 66 L.Ed. 475 (1922), and Mendenhall v. Barber-Greene Co., 26 F.3d 1573 (Fed.Cir.1994). These are my colleagues’ only authority for their assault on the principles of separation of powers. However, these cases, which relate solely to court-to-court relationships, are irrelevant to the constitutional question of whether an administrative agency can override or ignore a prior judicial decision of the same issue. The issue here presented is not the relationship between different courts, but between the branches of government.
My colleagues endorse administrative abrogation of final judicial decisions, despite the constitutional prohibition as explained from the earliest days of the nation in Haybum’s Case, 2 U.S. (2 Dali.) 408, 409 (1792) (the federal judiciary will not render judgments subject to revision, suspension, modification, or other review by executive or legislative branches). The courts understand this principle of constitutional government, e.g., Town of Deerfield, N.Y. v. FCC, 992 F.2d 420, 428 (2d Cir.1993) (“A judgment entered by an Article III court having jurisdiction to enter that judgment is not subject to review by a different branch of the government....”); United States v. Johnston, 258 F.3d 361, 373 (5th Cir.2001) (Higginbotham, J., concurring) (“It is axiomatic that only an Article III judge can be vested with the power to conduct a dispositive review of the judgment of another Article III court.”); Taylor v. United States, 181 F.3d 1017, 1024 (9th Cir.1999) (“Inasmuch as judicial jurisdiction implies the power to hear and determine a case, once court decisions achieve finality they may not be revised, overturned or refused faith and credit by another Department of Government.”); Georgia Association of Retarded Citizens v. McDaniel, 855 F.2d 805, 810 (11th Cir.1988) (The principle of separation of powers “protects judicial action from superior legislative review, a regime that would be obviously inconsistent with due process of law and subversive of the judicial branch *1353 of government.”); Cobell v. Norton, 263 F.Supp.2d 58, 65 n. 4 (D.D.C.2003) (“The appropriations provision at issue attempts to undermine the finality of an order issued by the judicial branch, which may constitute an unwarranted invasion of the authority vested in the federal courts by Article III of the U.S. Constitution.”).
By authorizing PTO reexamination to override a prior judicial adjudication of patent validity, this court has created a constitutional violation that should have been avoided. See NLRB v. Catholic Bishop of Chi., 440 U.S. 490, 500-01, 99 S.Ct. 1313, 59 L.Ed.2d 533 (1979) (courts are required to choose any reasonable construction of a statute that would eliminate the need to confront a contested constitutional issue); Hooper v. California, 155 U.S. 648, 657, 15 S.Ct. 207, 39 L.Ed. 297 (1895) (courts must resort to “every reasonable construction ... in order to save a statute from unconstitutionality”).
Here only one constitutionally permissible outcome is available. Just as this court’s adjudication of the validity of claims 26-31 of the '434 patent can not be relitigated between Baxter and Fresenius in another court, neither can it be overridden by the PTO on reexamination at Fre-senius’ initiative. See Chi. & S. Air Lines, 333 U.S. at 113, 68 S.Ct. 431; United States v. O’Grady, 89 U.S. (22 Wall.) 641, 648, 22 L.Ed. 772 (1874) (“[I]t is quite clear that Congress cannot subject the judgments of the Supreme Court to the reexamination and revision of any other tribunal or any other department of the government.”).
II
Finality
This court’s judgment in Fresenius USA, Inc. v. Baxter International, Inc., 582 F.3d 1288 (Fed.Cir.2009) finally resolved the issue of patent validity. The finality created by judicial decisions is essential to an effective legal system. “It ‘has found its way into every system of jurisprudence, not only from' its obvious fitness and propriety, but because without it, an end could never be put to litigation.’ ” San Remo Hotel. L.P. v. City & Cnty. of S.F., Cal., 545 U.S. 323, 336-37, 125 S.Ct. 2491, 162 L.Ed.2d 315 (2005) (quoting Hopkins v. Lee, 19 U.S. (6 Wheat.) 109, 114, 5 L.Ed. 218 (1821)). In Southern Pacific Railroad v. United States, 168 U.S. 1, 18 S.Ct. 18, 42 L.Ed. 355 (1897) the Court reiterated:
[A] right, question, or fact distinctly put in issue, and directly determined by a court of competent jurisdiction, as a ground of recovery, cannot be disputed in a subsequent suit between the same parties or their privies.... This general rule is demanded by the very object for which the civil courts have been established, which is to secure the peace and repose of society by the settlement of matters capable of judicial determination.
Id. at 48-49,18 S.Ct. 18. Patent validity is “capable of judicial determination,” id., and validity of the '434 patent was so determined, by final decision and mandate of this court, from which certiorari was requested and denied.
Judicial repose is fundamental to a nation governed by law. In Federated Department Stores, Inc. v. Moitie, 452 U.S. 394, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981) the Court discussed the public policy served by finality:
Public policy dictates that there be an end of litigation; that those who have contested an issue shall be bound by the result of the contest, and that matters *1354 once tried shall be considered forever settled as between the parties.
Id. at 401, 101 S.Ct. 2424 (citations omitted). The Federal Circuit has not been faithful to this principle. In In re Construction Equipment, 665 F.3d 1254 (Fed.Cir.2011) this court upheld the PTO’s invalidation based on reexamination of a patent that had been litigated and held valid eleven years earlier, the reexamination having been initiated by a party to the prior litigation. And in In re Swanson, 540 F.3d 1368 (Fed.Cir.2008) this court upheld the PTO’s invalidation of claims of a patent that had been held valid by the Federal Circuit in prior litigation, although the court acknowledged that “an attempt to reopen a final federal court judgment of infringement on the basis of a reexamination finding of invalidity might raise constitutional problems.” Id. at 1379 n. 5.
The loser in this tactical game of commercial advantage and expensive harassment is the innovator and the public, for it is now notorious that any invention of commercial value is ripe for not only protracted litigation but consecutive reexamination until the patent falls, or the patent or the patentee expires. The stability that is the foundation of the rule of law is lost, along with the patent-supported incentive to create and produce new things to public benefit.
The Court discussed the role of judicial finality in Southern Pacific Railroad:
[Enforcement [of judicial finality] is essential to the maintenance of social order; for the aid of judicial tribunals would not be invoked for the vindication of rights of person and property if, as between parties and their privies, conclusiveness did not attend the judgments of such tribunals in respect of all matters properly put in issue, and actually determined by them.
168 U.S. at 49, 18 S.Ct. 18 (citations omitted). The panel majority’s holding today violates this “essential” precept, for although the validity of the ’434 patent was conclusively adjudicated in the district court and the Federal Circuit, in proceedings in which Fresenius fully participated, my colleagues treat that conclusive adjudication as if it never happened.
In San Remo Hotel the Court again reviewed the rule of full faith and credit to judicial rulings:
The general rule implemented by the full faith and credit statute — that parties should not be permitted to relitigate issues that have been resolved by courts of competent jurisdiction — predates the Republic.
545 U.S. at 336, 125 S.Ct. 2491. The issue of validity of Baxter’s '434 patent was raised, litigated, and decided, with full participation of the accused infringer; it cannot be relitigated. See Marrese v. Am. Acad. of Orthopaedic Surgeons, 470 U.S. 373, 390-91,105 S.Ct. 1327, 84 L.Ed.2d 274 (1985) (“[A] party is precluded from asserting a claim that he had a ‘full and fair opportunity’ to litigate in a prior action.”).
On enactment of the initial reexamination statute, the PTO embodied the legislative purpose in MPEP § 2286 (4th ed. rev.7, July 1981), that
it is the policy of the Office that it will not “relitigate” in a reexamination proceeding an issue of patentability which has been resolved by a federal court on the merits after a thorough consideration of the prior art called to its attention in an adversary context.
That policy gave way to aberrant guidance from the Federal Circuit, in Ethicon, Inc. *1355 v. Quigg, 849 F.2d 1422, 1429 (Fed.Cir.1988) (“To the extent MPEP § 2286 states that the PTO is bound by a court’s decision upholding a patent’s validity, it is incorrect.”). It is time to restore not only the constitutional obligation, but also the legislative purpose.
The panel majority argues that the rules of finality do not apply here because the Federal Circuit, with its final judgment, included a remand to the district court to assess post-judgment damages. The courts of the nation have dealt with a variety of circumstances in which a final judgment included a remand to the district court. Here, all of the issues on appeal were finally adjudicated by the Federal Circuit; the remand authorized the district court to determine only post-judgment royalties. The remand had no relation to any issue in reexamination; validity had been finally resolved in the courts.
The majority invokes what it calls “traditional” notions of finality, maj. op. 1341-42, proposing that “tradition” means that if anything whatsoever remains to be done after final judgment, the final judgment is not final, and any issue of that judgment can be redecided. The majority proposes that the final adjudication of patent validity can be redecided by the courts and thus by the PTO, because of the remand to assess post-judgment damages. This theory is contrary to the precedent of every circuit. All circuits impose finality and preclusion as to issues that were finally decided in full and fair litigation. The Restatement summarizes the general rule:
[Preclusion requires] that the decision to be carried over was adequately deliberated and firm, even if not final in the sense of forming a basis for a judgment already entered. Thus preclusion should be refused if the decision was avowedly tentative. On the other hand, that the parties were fully heard, that the court supported its decision with a reasoned opinion, that the decision was subject to appeal or was in fact reviewed on appeal, are factors supporting the conclusion that the decision is final for the purpose of preclusion.
Restatement (Second) of Judgments § 13 cmt. g (1982). The courts often cite the reasoning in Lummus Co. v. Commonwealth Oil Refining Co., 297 F.2d 80 (2d Cir.1961):
Whether a judgment, not “final” in the sense of 28 U.S.C. § 1291, ought nevertheless be considered “final” in the sense of precluding further litigation of the same issue, turns upon such factors as the nature of the decision (i.e., that it was not avowedly tentative), the adequacy of the hearing, and the opportunity for review. “Finality” in the context here relevant may mean little more than that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again.
Id. at 89.
All of the circuits have applied preclusion and estoppel for issues that were litigated and decided, as the particular facts have warranted. Following is a sampling; starting with the First Circuit, in O’Reilly v. Malon, 747 F.2d 820 (1st Cir.1984) the court stated:
Whether a judgment, not ‘final’ in the sense of 28 U.S.C. § 1291, ought nevertheless be considered ‘final’ in the sense of precluding further litigation of the same issue, turns upon such factors as the nature of the decision (i.e., that it was not avowedly tentative), the adequacy of the hearing, and the opportunity for review.
*1356 Id. at 822-23 (quoting Lummus Co., 297 F.2d at 89). The Second Circuit in Zdanok v. Glidden Co., 327 F.2d 944 (2d Cir.1964) stated that
collateral estoppel does not require a judgment which ends the litigation and leaves nothing for the court to do but execute the judgment, but includes many dispositions which, though not final in that sense, have nevertheless been fully litigated.
Id. at 955 (citations omitted).
The Third Circuit, applying these principles, explained that issue preclusion is a “pliant” concept, as in Henglein v. Colt Industries Operating Corp., 260 F.3d 201 (3d Cir.2001):
Preliminarily, we observe that much of the Plans’ argument rests upon a concept of “finality” that is unduly rigid. In Dyndul v. Dyndul, 620 F.2d 409 (3d Cir.1980) (per curiam), we commented that finality for purposes of issue preclusion is a more “pliant” concept than it would be in other contexts.
Id. at 209-10 (citations omitted).
When an issue has been finally decided it cannot be reopened, although other issues remain open. The Fourth Circuit, in Swentek v. USAIR, Inc., 830 F.2d 552 (4th Cir.1987), stressed the common sense of issue preclusion and collateral estoppel:
We do not think the trial judge was required to direct entry of judgment under Rule 54(b) and await the appeal of Swentek’s privacy and battery claims before assigning the prior jury determinations preclusive effect.... Finality for purposes of collateral estoppel is a flexible concept and “may mean little more than that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again.”
Id. at 561 (citations omitted).
In Pye v. Department of Transportation of Georgia, 513 F.2d 290, 292 (5th Cir.1975) the Fifth Circuit rejected the argument that a state court judgment “is not final and therefore cannot be res judicata, since the amount of compensation has not been determined,” stating: “To be final a judgment does not have to dispose of all matters involved in a proceeding” (citations omitted). The court in Pye held that lack of determination of the amount of compensation does not negate finality for purposes of preclusion. Id. Analogy may be drawn to determination of the royalty for Fresenius’ post-judgment infringement.
In Employees Own Federal Credit Union v. City of Defiance, 752 F.2d 243 (6th Cir.1985), the Sixth Circuit stated:
[F]or purposes of issue preclusion (as distinguished from merger and bar), “final judgment” includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect.
Id. at 245 (citation omitted). The court, in discussing “general principles of res judi-cata,” stated that an “adverse judgment” following a “full and fair opportunity to litigate” is preclusive; “[o]ne bite at the apple is enough.” Id.
The Seventh Circuit in Miller Brewing Co. v. Joseph Schlitz Brewing Co., 605 F.2d 990 (7th Cir.1979), agreed that collateral estoppel does not require § 1291 finality:
To be “final” for purposes of collateral estoppel the decision need only be immune, as a practical matter, to reversal *1357 or amendment. “Finality” in the sense of 28 U.S.C. § 1291 is not required.
Id. at 996. The Eighth Circuit in Robinette v. Jones, 476 F.3d 585 (8th Cir.2007) found finality for issue preclusion purposes where the quantum of damages had not yet been determined, the court stating:
[T]he finality requirement for issue preclusion has become less rigorous. Recent decisions have relaxed traditional views of the finality requirement in the collateral estoppel context by applying the doctrine to matters resolved by preliminary rulings or to determinations of liability that have not yet been completed by an award of damages or other relief, let alone enforced.
Id. at 589 (citation omitted).
In John Morrell & Co. v. Local Union 304A of United Food & Commercial Workers, 913 F.2d 544 (8th Cir.1990), the court held that preclusion can apply “to matters resolved by preliminary rulings or to determinations of liability that have not yet been completed by an award of damages or other relief.” Id. at 564 (citation omitted). The court observed that “[b]oth parties presented abundant evidence on the issue at trial, and both had strong incentives to litigate the issue fully. Furthermore, the jury’s verdict addressed the exact issue which the arbitrator chose to reconsider.” Id.
So it is here. Fresenius and Baxter both had “strong incentives to litigate” validity, and did so through trial and appeal. The district. court’s judgment and our judgment on appeal “addressed the exact issue which the [PTO] chose to reconsider.” The PTO cannot override this court’s judgment, although post-judgment damages remained to be resolved.
The Ninth Circuit in Syverson v. International Business Machines Corp., 472 F.3d 1072 (9th Cir.2007) held that preclusion arose as to issues that were finally decided, although other aspects of the merits had been remanded:
[T]he proper query here is whether the court’s decision on the issue as to which preclusion is sought is final.
Id. at 1079 (internal citation omitted). See Clements v. Airport Auth. of Washoe Cnty., 69 F.3d 321, 330 (9th Cir.1995) (“Where the plaintiffs have had a full and fair opportunity to actually litigate the issue and did in fact litigate it, they cannot ordinarily be prejudiced by subsequently being held to the prior determination.”).
The Tenth Circuit in Smith Machinery Co. v. Hesston Corp., 878 F.2d 1290, 1293 (10th Cir.1989) discussed the “conclusive effect” as to the “specific issue” for which estoppel or law of the case preclusion was sought:
Courts also require a prior final judgment, at least on the specific issues sought to be foreclosed from relitigation, before a party may invoke collateral es-toppel or law of the case.
Id. at 1293 (citing) Employees Own, 752 F.2d at 245 (“relaxation of final judgment rule in collateral estoppel context appropriate in civil case when prior decision is ‘sufficiently firm to be accorded conclusive effect.’ ”).
The Eleventh Circuit in Christo v. Padgett, 223 F.3d 1324 (11th Cir.2000) mentioned the “widely recognized” rule of issue preclusion:
The Christos argue that the July 13 order cannot have preclusive effect because it was not a final judgment. Technically, the Christos’ assessment of the July 13 order is correct.... [However] [i]t is widely recognized that the *1358 finality requirement is less stringent for issue preclusion than for claim preclusion.
Id. at 1338-39 (citations omitted).
The D.C. Circuit in Martin v. Department of Justice, 488 F.3d 446 (D.C.Cir.2007) discussed issue preclusion based on a district court’s adjudication:
It is well established that a lower court judgment may have preclusive effect despite the lack of appellate review. “For purposes of issue preclusion ... ‘final judgment’ includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect.”
Id. at 455 (citations omitted, ellipse in original).
All of the circuits follow this approach, as did the Federal Circuit. In Interconnect Planning Corp. v. Feil, 774 F.2d 1132 (Fed.Cir.1985) this court stated:
Considering the finality issue, for collateral estoppel to arise the prior decision need not have been final in the sense of 28 U.S.C. § 1291 but, in the words of the Restatement, the prior adjudication must have been “sufficiently firm to be accorded conclusive effect.”
Id. at 1135.
In Block v. U.S. International Trade Commission, 777 F.2d 1568 (Fed.Cir.1985) this court summarized the criteria for purposes of issue preclusion:
One important factor that is considered in determining the finality of a decision for the purposes of preclusion is whether the decision was ever subject to appeal. In Lummus Co., 297 F.2d at 89, Judge Friendly stated that whether a “non-final” judgment “ought nonetheless be considered ‘final’ in the sense of precluding further litigation of the same issue, turns upon such factors as the nature of the decision (i.e., that it was not avowedly tentative), the adequacy of the hearing, and the opportunity for review.”
Id. at 1571-72 (citations omitted).
Despite this heavy and uniform weight, my colleagues insist that no appellate judgment is final as to any issue finally decided, if there is a remand on a different aspect of the case. That doctrinaire approach has been rejected throughout the federal system, and explicitly with respect to damages, for post-judgment damages was the issue here on remand.[3]
Finality for preclusion purposes when the issue of damages remained for determination, has been considered in several factual contexts, as discussed supra. In Zdanok the court stated that “[t]he mere fact that the damages of the [first] plaintiffs have not yet been assessed should not deprive that ruling of any effect as collat *1359 eral estoppel it would otherwise have,” for the decision was “final on the hotly contested issue of liability.” 327 F.2d at 955. See also, e.g., Metromedia Co. v. Fugazy, 983 F.2d 350 (2d Cir.1992):
The mere fact that the damages awarded to the plaintiff have not been yet calculated, though normally precluding an immediate appeal, ... does not prevent use of a final ruling on liability as collateral estoppel.
Id. at 366 (citation omitted); In re Docteroff, 133 F.3d 210, 215-16 (3d Cir.1997) (“[Application of collateral estoppel does not require the type of finality urged by Docteroff.... The [prior] judgment is sufficiently final. Indeed, there is nothing which would even suggest that that court has any intention of revisiting the issue of liability, that its findings are unreliable” although a “trial on damages” had yet to occur.); In re Nangle, 274 F.3d 481, 484-85 (8th Cir.2001) (collateral estoppel may apply “to matters resolved by preliminary rulings or to determinations of liability that have not yet been completed by an award of damages or other relief, let alone enforced”); B. Willis, C.P.A., Inc. v. BNSF Ry. Corp., 531 F.3d 1282, 1301 n. 24 (10th Cir.2008) (“While the entire eminent domain proceeding is not yet final, because the state courts are still considering the amount of compensation to which Willis is entitled for the easement, that fact is of no moment [to the preclusion analysis] because the claims that Willis asserts in this federal action do not implicate the adequacy of the compensation award.”).
Here, Fresenius contested liability and lost, by declaratory action brought in the district court, and on appeal to the Federal Circuit. All that remained on remand was an updating of the post-judgment royalty. The judgment of validity of the '434 patent was not subject to redetermination, and was final in all aspects relevant to the PTO reexamination proceedings. The remand for post-judgment royalty had no impact on patent validity.
The panel majority states that this court’s final judgment of validity and infringement, including damages to the date of judgment — adjudged by this court in 2009 — -was not “final” because the district court declined to grant Baxter’s motions for execution of past damages during the remand for determination of post-judgment damages. On Baxter’s first motion, filed on August 16, 2011, the district court explained that the motion was “premature” because Fresenius had requested a new trial on past damages and the court had scheduled a hearing on this issue for December 2, 2011. Fresenius USA, Inc. v. Baxter Int’l, Inc., No. 03-CV-1431 (N.D.Cal. Sept. 20, 2011), ECF No. 1117. The district court denied Fresenius’ motion for a new trial on past damages, stating “Nothing in the mandate in this case indicates that damages for infringement was an issue for remand.” Order at *4, Fresenius USA, Inc. v. Baxter Int’l, Inc., No. 03-CV-1431 PJH, 2011 WL 2160609 (N.D.Cal. May 26, 2011). Neither validity nor infringement was involved in this motion for a new trial.
After the district court adjudicated the post-judgment royalties on remand, Fre-senius filed the appeal now before us, on this question, and requested that execution be delayed during the appeal, offering to file a supersedeas bond. Meanwhile, the patent had expired. The district court accepted the bond offer, and stayed execution of the judgment pending appeal. Fresenius USA Inc. v. Baxter Int’l, Inc., No. 03-CV-1431 (N.D.Cal. May 3, 2012), ECF No. 1157. None of these events overtook *1360 this court’s final adjudication of validity and infringement in 2009. These aspects were not at issue in the remand.
The panel majority irrelevantly states that “[rjeversal and remand for further proceedings on the entire case defeats preclusion entirely until a new final judgment is entered by the trial court or the initial judgment is restored by further appellate proceedings,” citing G. & C. Merriam Co. v. Saalfield, 241 U.S. 22, 28, 29, 36 S.Ct. 477, 60 L.Ed. 868 (1916). There was no “reversal and remand for further proceedings on the entire case,” id. Validity, infringement, and pre-judgment damages were finally decided, and were neither reversed nor remanded; the remand related only to post-judgment remedy.
The Federal Circuit’s final judgment in 2009 was not “an interim appellate decision on invalidity,” maj. op 1342; it was the final decision of validity and infringement. These issues received no further attention, on denial of certiorari. Validity was finally adjudicated, and finally resolved. The judgment of validity is binding not only on the courts and the parties, but also on the PTO.
As mentioned supra, the majority relies on John Simmons Co. v. Grier Brothers Co., 258 U.S. 82, 42 S.Ct. 196, 66 L.Ed. 475 (1922) and Mendenhall v. Barber-Greene Co., 26 F.3d 1573 (Fed.Cir.1994). Simmons is inapposite, and Mendenhall relates to litigation in the courts.
Simmons concerned a reissue patent in which there were conflicting decisions by the Third Circuit and the Supreme Court on the same patent, and the district court, which on remand was assessing damages on an unrelated unfair competition claim, chose to follow the Supreme Court on the patent question and thus vacated its own prior decision. The Supreme Court approved, commenting that final judgment had not been reached.[4] Simmons raises an interesting question of the relationships among the courts, and stands alone on the generalization for which it is cited by my colleagues. Simmons does not hold that executive branch agencies are not required to respect a final judicial decision of the same issue.
Mendenhall, too, concerns court-to-court relationships. Mendenhall’s statement that “the decision was not final until the conclusion of the accounting,” 26 F.3d at 1581, neither bars issue preclusion, nor relieves the PTO of its obligation to separation-of-powers principles.
We need not here explore all of the possible circumstances and relationships in which questions of preclusion might arise. It cannot be debated that issue preclusion can apply although other issues may be unresolved. The Court has explained that both fairness to litigants and judicial economy are served by precluding the relitigation of matters that have been fully litigated, see Taylor v. Sturgell, 553 U.S. 880, 128 S.Ct. 2161, 171 L.Ed.2d 155 (2008):
By precluding parties from contesting matters that they have had a full and fair opportunity to litigate, these two doctrines [of claim and issue preclusion] protect against the expense and vexation attending multiple lawsuits, conserve ju *1361 dicial resources, and foster reliance on judicial action by minimizing the possibility of inconsistent decisions.
Id. at 892, 128 S.Ct. 2161 (citations omitted).
The only issue considered on PTO reexamination is patent validity. However, here validity of the Baxter patent claims at issue had already been finally decided in litigation between Baxter and Fresenius. “Once a judicial decision achieves finality, it ‘becomes the last word of the judicial department.’ ” Miller, 530 U.S. at 344, 120 S.Ct. 2246 (quoting Plant, 514 U.S. at 227, 115 S.Ct. 1447). As stated in Clements:
Vindication of this public interest is at its zenith in the realm of issue preclusion. It is the failure to adhere closely to basic issue preclusion that is most likely to lead directly to the inconsistent results that tend to undermine confidence in the judicial process.
69 F.3d at 330. My colleagues err in discarding these venerable considerations.
The great weight of jurisprudence and the Constitution-based proscription of executive override of judicial decision negate the panel majority’s relapse into “tradition.” Separation-of-powers and the principles of preclusion are not contrary to tradition.
Ill
Other .Arguments
A. The Mandate Rule
Baxter’s '434 patent was issued on September 21,1993. In 2003 Fresenius filed a declaratory judgment action, seeking declaration of invalidity and noninfringement of three Baxter patents including claims 26-31 of the '434 patent. That suit proceeded through discovery, motions, trials, and decision. On February 13, 2007 the district court entered final judgment that the three Baxter patents are valid and infringed, and assessed damages to the date of judgment. The district court’s final judgment is reported at Fresenius USA, Inc. v. Baxter International, Inc., No. 03-CV-1431 SBA, 2007 WL 518804 (N.D.Cal. Feb. 13, 2007).
On appeal, the Federal Circuit ruled on September 10, 2009 that claims 26-31 of the '434 patent are valid and infringed, and that the two other Baxter patents in suit are invalid. The court remanded to the district court to assess post-judgment remedy. The mandate issued on November 25, 2009. Fresenius USA Inc. v. Baxter Int'l Inc., 582 F.3d 1288 (Fed.Cir.2009).[5]
In 2005 Fresenius had filed with the PTO a request for reexamination of the '434 patent. Fresenius cited references and provided argument that claims 26-31 are invalid on the ground of obviousness. On March 18, 2010 — nearly four months after our mandate issued — the PTO Board of Patent Appeals and Interferences held that claims 26-31 of the '434 patent are invalid. This decision was appealed to the Federal Circuit, and this court affirmed. This court justified its conflict with its 2009 decision by stating that it was applying different standards of review — although obviousness is a question of law. That mandate issued on November 2, 2012. *1362 In re Baxter Int’l, Inc., 678 F.3d 1357 (Fed.Cir.2012); reh’g en banc denied, 698 F.3d 1349 (Fed.Cir.2012).
The panel majority incorrectly states that: “We affirmed the PTO’s determination in the reexamination proceeding and our mandate issued. Meanwhile the district court entered judgment against Fresenius in the pending infringement proceedings.” Maj. op. 1332. That is incorrect. The infringement proceedings were over in the district court and on appeal to the Federal Circuit, including petitions for rehearing and for certiorari. The Federal Circuit’s final judgment and mandate issued in 2009. There were no infringement proceedings pending when we affirmed the PTO’s reexamination decision in 2012; and that affirmation makes no mention of any pending infringement proceeding.
The remand to assess post-judgment royalty did not affect the final adjudication of validity. When validity was finally decided by the Federal Circuit in 2009, this was “the last word of the judicial department with regard to [the] particular ... controversy.” Plant, 514 U.S. at 227, 115 S.Ct. 1447. When the mandate includes a remand to consider a specific issue, other issues cannot be reopened. See, e.g., Amado v. Microsoft Corp., 517 F.3d 1353, 1360 (Fed.Cir.2008) (on any subsequent appeal in the same case, “any issue within the scope of the judgment [previously] appealed from-not merely those issues actually raised — ” cannot be reconsidered); Engel Indus., Inc. v. Lockformer Co., 166 F.3d 1379, 1383 (Fed.Cir.1999) (“[I]ssues actually decided — those within the scope of the judgment appealed from, minus those explicitly reserved or remanded by the court — are foreclosed from further consideration.”); Laitram Corp. v. NEC Corp., 115 F.3d 947, 951 (Fed.Cir.1997) (“Upon return of its mandate, the district court cannot give relief beyond the scope of that mandate.”).
The district court so recognized, and after our remand to determine post-judgment damages, the district court rejected Fresenius’ request to reopen the entire issue of damages, stating: “Nothing in the mandate in this case indicates that damages for infringement was an issue for remand, and nothing suggests that this court should consider new evidence.” Order at *4, Fresenius USA Inc. v. Baxter Int’l, Inc., No. 03-1431 PJH, 2011 WL 2160609 (N.D.Cal. May 26, 2011). See Sprague v. Ticonic Nat’l Bank, 307 U.S. 161, 168, 59 S.Ct. 777, 83 L.Ed. 1184 (1939) (an appellate court’s “mandate is controlling as to matters within its compass”).
B. The Flawed Statutory Analogy
My colleagues now reject the mandate rule, the rules of issue preclusion and es-toppel, and all other rules of finality, stating the position that since the matter of postjudgment royalty was receiving attention on remand, there is no finality, and thus no obligation on the PTO to respect finality of adjudication. In support of this theory my colleagues draw analogy to statutory change, stating that “We have held that a new statute enacted even after a final decision on appeal is applicable in a pending case, so long as our mandate ending the litigation has not yet issued.” Maj. op. 1346. The majority cites GPX International Tire Corp. v. United States, 678 F.3d 1308, 1312 (Fed.Cir.2012) as authority for the argument that a PTO reexamination decision is like a newly enacted law, and overrides a prior final judicial determination.
I again note that the mandate ending this litigation had indeed issued — contrary *1363 to the majority’s statements. GPX Tire supports not my colleagues’ argument, but the contrary position. In GPX Tire the court confirmed that after the mandate has issued the court’s decision is final, and is not subject to the “new statute,” whatever the content of the new statute. Id. at 1310.
As discussed in QUALCOMM Inc. v. FCC, 181 F.3d 1370 (D.C.Cir.1999), after a final judgment has been rendered, that judgment cannot be altered by legislative change, even if an aspect of the case was pending on remand when the legislation was enacted. The QUALCOMM court explained that allowing newly enacted legislation to disturb a court’s decision would “pose a constitutional question of whether Congress could change the result of a final judicial decision.” Id. at 1375 (citing Plant, 514 U.S. at 240, 115 S.Ct. 1447).
The QUALCOMM court elaborated that “the separation of powers doctrine embedded in the Constitution protects the final judgments of Article III courts from legislative interference,” id. at 1379; the court warning that: “By passing retroactive legislation affecting a case already finally adjudicated, Congress had circumvented the fundamental principle that the judicial power includes the authority to render dis-positive judgments, and had thus violated the principle of separation of powers.” Id. (citations omitted).
The separation of powers doctrine protects judicial rulings, and the public, from executive as well as legislative interference. The panel majority attempts to blunt the force of the QUALCOMM reasoning, arguing that in QUALCOMM “the appellate mandate in question was not ‘simply for further proceedings,’ but ordered specific, immediate relief for a party.” Maj. op. 1346 n. 12. The remand in QUALCOMM instructed the FCC to conduct further proceedings to determine whether to grant Qualcomm a “pioneer’s preference” and to identify any “alternative relief.” Id. at 1377. This “vague” remand instruction “recognized that alternative relief remained to be identified.... ” and did not decide the issue of Qualcomm’s preference “per se.” Id.
Similarly, the remand in our Fresenius decision was not for generalized further proceedings in the district court; the remand was specifically to apply a royalty to Fresenius’ post-judgment infringement. The remand did not require, and did not permit, redetermination of the issues that had been finally decided.
The majority attempts to distinguish the QUALCOMM decision on its facts, stating that there “the judiciary had entered ‘a final judgment entitling QUALCOMM to a preference,’ ” maj. op. 1346 n. 12, and that “[bjecause of the finality of the earlier decision ... the legislation was construed to be inapplicable.” Id. But the QUAL-COMM judgment left both the merits of Qualcomm’s “pioneer preference” and other “alternative relief’ to be decided on remand, 181 F.3d at 1377; this judgment certainly would not be “final” under the majority’s standard: The QUALCOMM judgment did not “end[ ] the litigation on the merits and leave[] nothing for the court to do but execute the judgment.” Maj. op. 1341 (quoting Mendenhall, 26 F.3d at 1580). Moreover, the QUAL-COMM judgment left “the scope of relief ... to be determined.” Maj. op. 1341. There is no basis in fact or law to hold that our decision in Fresenius I is any less final than that considered in QUALCOMM.
The strained analogy of a PTO reexamination decision to statutory change does not overcome the finality of judgment of *1364 issues that had already been finally decided by the court.
C. The Flawed Reissue Analogy
I comment on the majority’s analogy to patent reissue law. The majority states that the reissue statute authorizes the PTO to ignore final judicial rulings, citing the “intervening rights” provision. The majority proposes that since “the reexamination statute provides that reexamined claims ‘have the same effect [in pending litigation] as that specified in § 252 of this title for reissued patents.’ 35 U.S.C. § 307(b),” this means that PTO reexamination is liberated from the Constitution. Maj. op. 1136 (brackets in original).
This theory not only misstates the reexamination statute, but taints the reissue statute. Reexamination section 307(b) states:
§ 307(b). Any proposed amended or new claim determined to be patentable and incorporated into a patent following a reexamination proceeding will have the same effect as that specified in section 252 of this title for reissued patents on the right of any person who made, purchased, or used within the United States, or imported into the United States, anything patented by such proposed amended or new claim, or who made substantial preparation for the same, prior to issuance of a certificate under the provisions of subsection (a) of this section.
Section 307(b) provides for intervening rights, which arise when there is an “amended or new claim” resulting from the reexamination. In this case, however, there is no amended or new claim. The relevance of the panel majority’s argument is obscure, for the intervening rights provision of the reissue statute does not authorize the PTO to review, override, or deny full faith and credit to judicial rulings.
Both reissue and reexamination are remedial in nature, and both protect persons who relied on earlier forms of changed claims. In Aspex Eyewear, Inc. v. Marchon Eyewear, Inc., 672 F.3d 1335 (Fed.Cir.2012) the court explained that
claims that emerge from reexamination do not create a new cause of action that did not exist before. We therefore reject Aspex’s argument that the issuance of [amended and new claims] had the effect of negating the res judicata effect of the prior litigation [of the original claims].
Id. at 1341-42 (internal citations omitted). The “res judicata effect” in Aspex tracks the issue preclusion effect in this case. The panel majority’s extensive analysis of the reissue statute neglects to mention that the claims here at issue were unchanged during reexamination, and that since 1928 such claims retained their original effect upon reissue of the patent. The proposal that reissue law supports the dominance of a PTO reexamination decision over a prior adjudication in the courts is a needless distraction.
Summary
The court’s ruling that PTO reexamination overrides the prior adjudication of patent validity is contrary to the legislative purposes of reexamination, offensive to principles of litigation finality and repose, and violative of the Constitution. The judicial decision of patent validity is not available for review, revision, or annulment by the PTO. When the issue of patent validity has been litigated and finally decided in the courts, this binds not only *1365 other courts, the parties, and the public; it binds the other branches of government. From the court’s contrary decision, I respectfully dissent.

. . The panel majority misstates or misunderstands the position of this dissent. I do not propose that "PTO reexamination cannot affect pending infringement suits,” as the majority describes the dissent, maj. op. 1349. I propose that the final decision in a patent infringement suit cannot be overturned by a later decision on reexamination. I propose that to hold otherwise violates the rules of finality of judgments, and violates the constitutional plan.

. The majority criticizes the district court’s denial of Fresenius' request to stay the infringement trial after Fresenius requested reexamination, after receiving an adverse summary judgment of infringement. Maj. op. 1335. The majority neglects to mention the district court's concern for Fresenius’ abuse of the reexamination process, the district court stating:
“Parties should not be permitted to abuse the process by applying for reexamination after protracted, expensive discovery or trial preparation.” Freeman v. Minnesota Mining and Manufacturing Co., 661 F.Supp. 886, 888 (D.Del.1987) (citations omitted). To do so would be to allow a party to use reexamination as “a mere dilatory tactic.” Id.
It is difficult to imagine a scenario in which a. dilatory motive could be more apparent.... Fresenius should not have waited until it had had a trial, had litigated motions for judgment as a matter of law and for a new trial on the merits, and then had a favorable PTO action to request a stay. Any irreparable harm that Fresenius will suffer will be of its own making, attempting, as it did, to "game the system” by playing both fields simultaneously.... [T]o allow Fresenius to now derail this litigation would be to sanction the most blatant abuse of the reexamination process. The express purpose of the reexamination procedure is to shift the burden from the courts by reducing costly and time-consuming litigation.
Order at *6-8, Fresenius USA, Inc. v. Baxter Int’l, Inc., No. 03-CV-1431 SBA (N.D.Cal. June 6, 2007) (citations omitted, emphasis in original).

. My colleagues seek support in the Restatement (Second) of Judgments, maj. op. 1347, but there is none to be found. Both provisions cited (but not quoted) by the panel majority state the principle, universally understood, that "when two actions are pending which are based on the same claim, or which involve the same issue, it is the final judgment first rendered in one of the actions which becomes conclusive in the other action.” Restatement (Second) of Judgments § 14 cmt. a (1982); see § 27 cmt. I ("If two actions which involve the same issue are pending between the same parties, it is the first final judgment rendered in one of the actions which becomes conclusive in the other action, regardless of which action was brought first.”). The "final judgment first rendered” in this matter is the final judgment of validity and infringement rendered in 2009, see Presenius I. That final judgment is "conclusive.” § 14 cmt. a; § 27 cmt. 1. That is the final judgment that the court now holds is negated by the later ruling of the administrative agency.

. The Simmons court ruled that there “was not a final decree” because "[t]he prayer for relief based upon infringement of patent and that based upon unfair competition in trade were but parts of a single suit in equity” and "there can be but one final decree in a suit in equity.” 258 U.S. at 89, 42 S.Ct. 196. But see 1938 Fed. R. Civ. Pro. (Rule 2) (abolishing the distinction between suits at law and equity).

. On remand, the district court declined to stay the damages proceeding until completion of the ongoing PTO reexamination; the court stating that "the effect on this litigation of any final action on the reexamined '434 patent is far from clear." Order at *2, Fresenius USA, Inc. v. Baxter Int’l, Inc., No. 03-1431 PJH, 2011 WL 2160609 (N.D.Cal. May 26, 2011).